[Civ. No. 46983. Second Dist., Div. Five. Mar. 25, 1976.]

LAWRENCE H. DEUTSCH et al., Plaintiffs and Appellants, v. PHILLIPS PETROLEUM COMPANY, Defendant and Respondent.

**Counsel**

Lawrence H. Deutsch, in pro. per., and for Plaintiffs and Appellants.

O'Melveny & Myers, Everett B. Clary and Richard G. Berg for Defendant and Respondent.

**Opinion**

**STEPHENS, Acting P. J.**—Plaintiffs appeal from an order sustaining the general demurrer of defendant Phillips Petroleum Company (Phillips) and dismissing plaintiffs' amended unlawful detainer complaint against this defendant.

*Facts*

On December 19, 1973, plaintiffs purchased the commercial real property located at 16103 Ventura Boulevard, Encino, California which is the subject of this lawsuit. Plaintiffs also acquired an assignment of the lessor's interest in a lease of said premises, dated June 21, 1955, between plaintiffs' grantor, Ohio National Life Insurance Company, and defendant's assignor, Tidewater Associated Oil Company (Tidewater). This lease, which provided for fixed monthly rentals, gave Tidewater possession of the subject property for a 25-year period. Paragraph 11 of the

lease granted Tidewater an option to purchase the subject property exercisable "at the expiration of the 15th or any subsequent year of the [lease] . . . by giving Lessor 180 days prior written notice of the intention so to do and by paying to Lessor at the time of such purchase the sum of $1.00 plus a sum equal to such balance of Lessor's cost of the demised premises [stated elsewhere as $83,700] . . . as would then remain unamortized if such cost with interest thereon at the rate of *4.50%* per annum were amortized by application of each monthly rental first to accrued interest and then to amortization of such cost, but in no instance less than One Dollar."

In addition, Paragraph 5 of the lease specified that Tidewater "shall conduct its business on the said demised premises in conformity with all State or Federal Statutes and Municipal Ordinances applicable thereto . . . ."

Defendant Phillips acquired the lessee's interest in July 1966, when it purchased the Western Manufacturing and Marketing Division of Tidewater (Western Division). In this transaction, Phillips acquired (for a purchase price of $366 million) a refinery, 13 product terminals, 219 bulk plants, the capital stock of Seaside Oil Company, transportation facilities, an office building, an inventory of petroleum products and material, and approximately 3,250 service stations. The property which is the subject of this litigation is one of those 3,250 service stations.

On July 13, 1966, the United States commenced a civil antitrust action against Phillips and Tidewater, alleging that Phillips' acquisition of the Western Division from Tidewater violated section 7 of the Clayton Act as amended (15 U.S.C. § 18).[1] On November 13, 1973, the United States District Court for the Central District of California adjudged and decreed that said acquisition was a violation of the Clayton Act. (*United States* v. *Phillips Petroleum Company* (C.D. Cal.) 367 F.Supp. 1226.) On July 8, 1974, the United States Supreme Court affirmed the judgment of the district court. (*Sub nom. Phillips Petroleum Co.* v. *United States,* 418 U.S. 906 [41 L.Ed.2d 1154, 94 S.Ct. 3199]; rehg. den. (1974) 419 U.S. 886 [42 L.Ed.2d 130, 95 S.Ct. 158].)

---

[1]Section 7 of the Clayton Act as amended provides in pertinent part: "[N]o corporation . . . shall acquire the whole or any part of the assets of another corporation . . . where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

On or about July 8, 1974, plaintiffs transmitted to Phillips a letter purporting to terminate the lease on the basis of the Clayton Act violation, which allegedly constituted a breach of the provisions of Paragraph 5 of the lease. Thereafter, on or about August 15, 1974, Phillips rejected plaintiffs' demand to quit. Plaintiffs then filed this unlawful detainer action.

Plaintiffs' amended complaint states two causes of action, both of which plead unlawful detainer. The first cause of action alleges the Clayton Act violation as a violation of a "Federal Statute" in contravention of Paragraph 5 of the lease. The second cause of action alleges the same transaction—Phillips' acquisition from Tidewater of this leasehold together with the other assets and properties making up the Western Division—is a violation of Business and Professions Code sections 16720 and 16722 (the Cartwright Act), thereby contravening the Paragraph 5 prohibition against violations of "State . . . Statutes."

Phillips demurred generally to each cause of action of the amended complaint on a number of grounds. The general demurrer to both causes of action was sustained on the grounds "set forth in the demurrer, particularly the failure to allege facts showing a breach of the lease." Accordingly, the action was dismissed as to defendant Phillips. Plaintiffs take this appeal from that order of dismissal.

*Discussion*

■ The case at bar apparently presents a case of first impression —namely, whether a violation of the federal antitrust laws constitutes such illegal or unlawful activity as will warrant the termination of a lease by the lessor.

Illegal or unlawful activity may be made the basis of a termination of a leasehold by either statute (e.g., Code Civ. Proc., § 1161, subd. 4; see generally 100 A.L.R.2d 465 et seq.) or express covenant. In the case at bar, plaintiffs rely solely upon the express covenant contained in Paragraph 5.[2] In dismissing this action as to defendant Phillips, the trial

---

[2]Plaintiffs do not assert that defendant's alleged violation falls within the Code of Civil Procedure section 1161, subdivision 4, proscription against "using leased premises for an unlawful purpose." Such an assertion would be futile because this statutory language requires the physical use of the demised premises for some unlawful purpose. (Cf. *Lituchy* v. *Lathers,* 35 Misc.2d 556 [232 N.Y.S.2d 627], in which the court stated: "The term 'use' of premises for illegal purposes implies doing of something customarily or habitually *upon* the premises." (Italics added).) While the asserted antitrust violation clearly qualifies as "unlawful," it is not a " 'use' of the premises."

court determined, as a matter of law, that defendant's alleged antitrust violation did not constitute a breach of that covenant. We agree, and therefore affirm the judgment (order of dismissal).

The covenant contained in Paragraph 5 was construed according to the general rules of contract interpretation. (*Medico-Dental etc. Co.* v. *Horton & Converse,* 21 Cal.2d 411, 418-419 [132 P.2d 457].) This unambiguous provision was construed so as to give the words used their ordinary meaning. (Civ. Code, § 1644.) In addition, this construction furthers the purpose of this covenant. (Cf. *Moss Dev. Co.* v. *Geary,* 41 Cal.App.3d 1, 9 [115 Cal.Rptr. 736].)

On this appeal, plaintiffs emphasize the word "all" (as used in "all State or Federal Statutes . . . ."), asserting that the trial court erroneously construed this word as not including the Clayton Act. In forwarding this contention, plaintiffs fail to consider the function of this word within the entire provision. Paragraph 5 must be construed so as to give force and effect to *every* word contained within it. (*Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 310 [266 P.2d 856]; *Cole* v. *Low,* 81 Cal.App. 633, 637 [254 P. 676].) Accordingly, the phrase "all State or Federal Statutes" must be considered in conjunction with the requirement that the "Lessee . . . conduct its business on the said demised premises. . . ."

Moreover, the pertinent provision in Paragraph 5 concludes by specifying that the "Lessee . . . conduct its business . . . in conformity with all State or Federal Statutes and Municipal Ordinances *applicable thereto* . . . ." (Italics added.) The emphasized clause may modify either "business" or "premises." The application of this phrase to the word "business" would result in forfeiture of the lease regardless of the relationship of the statute to the premises, thus reducing the phrase "in the said demised premises" to a nullity. Therefore, the only reasonable construction of this covenant is that the words "applicable thereto" modify the word "premises," thereby requiring that a breach of the covenant be a violation of a statute which is applicable to the premises. Accordingly, the issue presented is whether the asserted antitrust violation, as alleged, satisfies this necessary criterion.

The antitrust violation which is the basis of this suit is a violation of a statute which is directed to the conduct of defendant's business rather than to the premises which are the subject of this lawsuit. Plaintiffs attempt to circumvent this fact by contending that defendant's acquisition of this parcel of property is the event which constitutes the violation

of section 7 of the Clayton Act, *supra* (15 U.S.C. § 18). However, this contention is not an accurate interpretation of the district court's opinion. The district court determined that the acquisition of the entire Tidewater Western Division was in violation of section 7 of the Clayton Act. (*United States* v. *Phillips Petroleum Company* (C.D.Cal.) *supra,* 367 F.Supp. 1226, 1262 (affd. *sub nom. Phillips Petroleum Co.* v. *United States,* 418 U.S. 906 [41 L.Ed.2d 1154, 94 S.Ct. 3199]; rehg. den. 419 U.S. 886 [42 L.Ed.2d 130, 95 S.Ct. 158].) This lone gas station is merely a trivial fraction of the total assets which defendant acquired in that transaction. Without speculating on whether the district court would have determined that the sole acquisition of this lone gas station would have constituted a Clayton Act violation, it is sufficient to observe that that tribunal did not in fact determine that the acquisition of this gas station was such a violation. The judgment of that court, in pertinent part, mandates that Phillips "divest itself of such assets . . . as are necessary to eliminate the violation of Section 7 . . . ." (*Id.,* at p. 1263.) Plaintiffs have failed to even allege that the gas station in question is one of those assets of which Phillips must divest itself.

Heretofore, the resolution of this matter has been determined primarily by the language of the covenant in question. However, we are directed to the identical conclusion by an analysis of the purpose of this covenant. The purpose of a covenant such as that contained in Paragraph 5 is to protect the lessor's interest in the demised premises by limiting the functional use of the property. Such a provision ensures that the lessee will harm neither the physical attributes nor the reputation of the property in question. In addition, it serves as an additional assurance to the lessor that the lessee will utilize the demised premises in a manner conducive to the lessor's interest so as to secure the continued payment of the rental obligations. The asserted antitrust violation does not pertain to any of the aforementioned purposes. Such a violation has certainly failed to physically threaten the well-being of the property. Moreover, such a civil violation is not the type of unlawful criminal activity which attaches a stigma to the premises. Finally, plaintiffs have not alleged any facts demonstrating that this violation has so impaired defendant's use of the premises as to threaten plaintiffs' continued receipt of the monthly rental obligations.

The thrust of this covenant is directed to the functional use of the property. In so holding, we adopt the view recently expressed by the Missouri Court of Appeals in *Sherwood Medical Industries* v. *Building Leasing Corp.* (Mo.App.) 527 S.W.2d 407. There, the court was presented with the contention that an attempt to physically alter the demised

premises without a city permit was a violation of a similar covenant mandating that the property be used only for a "lawful purpose." The court determined that such a limitation related only to the functional use of the premises, and that "some ancillary legal violation" did not breach the covenant. (*Id.,* at p. 410; see also *FCA Properties* v. *Hudson Oil Co.,* 35 Mich.App. 79 [192 N.W.2d 390, 394].) In the case at bar, Paragraph 5 continues by specifying that the "lawful purposes" for which the lessee may use the demised premises include "the right to maintain and operate said demised premises as a service station . . . ." The functional purpose for which this property is being used is as a service station. The asserted antitrust violation does not stem from that functional use of this property. That is, Phillips was not found to be in violation of the antitrust laws because of its use of this property as a service station. The asserted antitrust violation is an "ancillary legal violation" which does not relate to the functional use of this property. It therefore fails to constitute a breach of Paragraph 5.

The result which we here reach is in accord with the statutory doctrine that the law abhors forfeitures, and will strictly construe forfeiture provisions against the party in whose behalf they are invoked. (Civ. Code, § 1442.) In addition, we note that by reason of the option to purchase provision contained in Paragraph 11, a forfeiture in the instant case would be unduly harsh. A forfeiture would deprive defendant of a bargained for right to acquire full ownership of the subject property for a nominal additional consideration.

Although this discussion has been directed only to the federal antitrust violation alleged in the first cause of action, the same considerations pertain to the allegations concerning the Cartwright Act violations.

Because we determine that plaintiffs have failed to state a cause of action against defendant, we find it unnecessary to consider the other arguments presented by defendant in support of its demurrer.

The judgment (order of dismissal) as to this defendant is affirmed.

Ashby, J., and Hastings, J., concurred.