[No. B003778. Second Dist., Div. Three. Mar. 28, 1985.]

ALAN ROWE et al., Plaintiffs and Appellants, v.
WELLS FARGO REALTY SERVICES, INC.,
Defendant and Respondent.

**COUNSEL**

Rick Edwards for Plaintiffs and Appellants.

Munns, Kofford, Hoffman, Hunt & Throckmorton, Jerry R. Cahan and Edward H. Cummings for Defendant and Respondent.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

Plaintiffs and appellants Alan and Helen Rowe and Mark Fisher (appellants) brought an unlawful detainer action seeking a forfeiture and default

of a 10-year lease, alleging defendant and respondent Wells Fargo Realty Services, Inc. (Wells Fargo),[1] the lessee, committed waste and used the leased premises for an unlawful purpose. This appeal is from the trial court's grant of summary judgment in favor of Wells Fargo. We affirm.

### STATEMENT OF FACTS

On July 1, 1976, Wells Fargo, as lessee, entered into a 10-year commercial lease with appellants' predecessor in interest, as lessor, for the entire second floor and a portion of the third floor of an office building in Pasadena. Appellants purchased the building, subject to the lease, in December of 1977.

As relevant here, the lease set forth the lessee's and lessor's obligations as follows:

"5. The premises shall be used for general office purposes and data processing. Lessee shall not do or permit to be done in or about the premises . . . anything which is prohibited by or will in any way conflict with any law, statute, ordinance or governmental rule or regulation now in force or which may hereafter be enacted or promulgated. . . . Lessee shall not . . . use or allow the premises to be used for any improper, immoral, unlawful or objectionable purpose; nor shall Lessee . . . commit or suffer to be committed any waste in, on or about the premises.

"13. Lessor shall at its expense furnish the premises with (i) electricity for lighting, the operation of general office machines and the operation of computer and data entry facilities; (ii) heat and air conditioning as reasonably required on a seven (7) day, twenty-four (24) hour basis for the comfortable occupation of the premises; . . . (iv) lighting replacement for Building lights. . . .

"15. Lessee shall faithfully observe and comply with all reasonable rules and regulations from time to time put into effect by Lessor. . . .

"18. Each of the following shall be deemed an 'Act of Default' by Lessee and a material breach of the Lease: . . . (b) Lessee shall fail to observe, keep or perform any of the other terms, convenants, agreements or conditions herein or in the rules and regulations described in Paragraph 15 hereof. . . . [¶] If Lessee commits an Act of Default hereunder, Lessor, at any time

---

[1]Subsequent to the entry of judgment, Wells Fargo changed its name to FN Realty Services.

thereafter and without waiving any other rights available to Lessor, at law or in equity, may: . . . (ii) Declare the term hereof ended, reenter the premises, with or without process of law, and remove all persons therefrom."

Within 10 days of the close of escrow, appellants attempted to force an increase in rental payments on Wells Fargo, to compensate for "the costs involved in maintaining the building." One year later, appellants demanded a price for parking spaces which was far more than the going rate for the area. In their letter they indicated the parking rate hikes were being used as an indirect means to increase the rent on the premises in order to offset the utility bills that appellants were obligated to pay according to the lease.

On June 20, 1980, appellants sent Wells Fargo a letter in order to "reaffirm" certain building rules, pursuant to paragraph 15 of the lease; at no prior time had appellants submitted any rules to Wells Fargo. The rules stated:

"1. Only authorized service personnel are permitted to make adjustments on the heating, air-conditioning equipment and timing units.

"2. No adjustment of the thermostats will be permitted except by authorized service personnel. Thermostats will be set at 78 degrees for the summer to conform with the [Department of Energy] regulations and at 65 degrees in the winter.

"3. No tampering with locked equipment or thermostats is permitted.

"4. The main heating and air-conditioning equipment will be operated only as required for normal workdays during the week.

"5. If your personnel occupy the premises at any time beyond normal working hours or on weekends, we will require written advance notice, including the names and number of people who will be on the premises.

"6. Electrical fixtures will be operated with only the necessary number of bulbs."

Subsequently, on July 23, 1980, appellants sent Wells Fargo a three-day notice to quit the premises, pursuant to Code of Civil Procedure section

1161, subdivision 4.[2] Nineteen days later, appellants filed an action for unlawful detainer. The complaint contained three causes of action:

The first count alleged that Wells Fargo "committed waste, under C.C.P. § 1161(4), upon the premises and property by the following acts: WELLS FARGO repeatedly tampered with the plenum temperature control of the heating and air conditioning system of the property causing it to heat and cool simultaneously. Defendant repeatedly left on office machinery after hours. Defendant installed, used, and uses light fixtures and/or bulbs without lessor's authorization. Defendant by its tampering repeatedly damaged the plenum temperature control. Defendant by its tampering damaged thermostats in the premises."

The second count alleged that Wells Fargo "repeatedly used the premises for an unlawful purpose, under C.C.P. § 1161(4), by tampering with the plenum temperature control of the heating and air conditioning system of the property so as to cause the temperature within the premises to lower below the limit allowed by the Department of Energy (Department of Energy Regulations § 490.12)."

The third count alleged that the acts of waste and use of the premises for an unlawful purpose constituted "non-curable breaches by WELLS FARGO of its obligations under paragraphs 5 and 15 of the lease."

A trial date in the matter was set for January 21, 1981. However, appellants took the action off calendar just two days before the trial was to begin and took no further action to prosecute the case. On September 13, 1982, Wells Fargo moved for summary judgment on the grounds, inter alia, that an unlawful detainer action could not be maintained because the acts alleged to be "waste" did not constitute "waste" as a matter of law and the uses of the premises alleged to be unlawful did not constitute a statutory violation nor a violation of the lease as a matter of law. Appellants opposed the motion. The trial court granted summary judgment in favor of Wells Fargo and appellants appealed.

### ISSUE

Whether under the lease or under Code of Civil Procedure section 1161, subdivision 4, the complaint stated a cause of action for unlawful detainer

---

[2]Code of Civil Procedure section 1161, states, in pertinent part: "A tenant of real property, for a term less than life . . . is guilty of unlawful detainer:

"4. Any tenant . . . committing waste upon the demised premises, contrary to the conditions or covenants of his lease, . . . or using such premises for an unlawful purpose, thereby terminates the lease, and the landlord, or his successor in estate, shall upon service of three days' notice to quit upon the person or persons in possession, be entitled to restitution of possession of such demised premises under the provision of this chapter."

based on use of the premises for an "unlawful purpose" or on the theory of "waste."

Discussion

I.

*Standard of review*

■ "[A] motion by a *defendant* under section 437c of the Code of Civil Procedure[3] necessarily includes a test of the sufficiency of the complaint. . . . Motions for summary judgment in such situations have otherwise been allowed as being in legal effect motions for judgment on the pleadings." (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483], italics in original.) Thus, if the reviewing court finds the complaint fails to state facts sufficient to constitute a cause of action as a matter of law, it need not reach the question whether plaintiff's opposition to the summary judgment motion raises a triable issue of fact. (*Id.,* at p. 750.)

II.

*The complaint failed to state a cause of action for unlawful detainer based on use of the premises for an "unlawful purpose."*

■ Appellants contend their allegations that Wells Fargo used the premises for an unlawful purpose, both under Code of Civil Procedure section 1161, subdivision 4 (count 2), and under paragraphs 5 and 15 of the lease (count 3), raised a question of fact for determination at trial. Counts 2 and 3 are based on allegations that Wells Fargo repeatedly changed the thermostat on the leased property so that the temperature fell below the limits imposed by Department of Energy Regulation, section 490.12,[4] in

---

[3]Code of Civil Procedure section 437c states in pertinent part: "(a) Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto.

"(c) The motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Code of Civil Procedure section 1170.7, pertaining to unlawful detainer actions, provides that summary judgment "shall be granted or denied on the same basis as a motion under Section 437c."

[4]Department of Energy Regulation, section 490.12, states that tenants of commercial buildings may not lower the room dry bulb temperature below 78 degrees Fahrenheit in the summer or above 65 degrees Fahrenheit in the winter. This regulation became effective on July 16, 1979, after the parties had entered into the lease. The regulation was cancelled by Presidential proclamation on February 18, 1981.

violation of the terms of the lease as "reaffirmed" by appellants in their letter of June 20, 1980.

Wells Fargo argues that even if its employees reset temperature controls on the premises in violation of Department of Energy regulations, as a matter of law allegations to that effect do not state facts sufficient to show it used the premises for an "unlawful purpose," warranting a forfeiture of its lease.

Wells Fargo relies on *Deutsch v. Phillips Petroleum Co.* (1976) 56 Cal.App.3d 586 [128 Cal.Rptr. 497], in urging that appellants have failed to state a proper cause of action for unlawful detainer. In *Deutsch,* the lessor of a service station brought an unlawful detainer action against its lessee after the latter was convicted of a violation of federal antitrust laws. The action was based on an alleged violation of the lease, which required the lessee to " 'conduct its business . . . in conformity with all State or Federal Statutes and Municipal Ordinances applicable thereto.' " (*Id.,* at p. 590, italics in original.)

The *Deutsch* court determined the language of the lease required a statutory violation relating to the "functional use" of the property itself, in order to constitute a breach of covenant. The antitrust violation was based on a statute relating to the conduct of defendants' business, rather than one relating to the physical premises. Thus, the court found that the tenant's antitrust conviction was an " 'ancillary legal violation' " which did not constitute a breach of the lease. (*Id.,* at p. 592.)

Here, one count of appellant's complaint alleges "use of the premises for an unlawful purpose" in breach of Wells Fargo's obligations under paragraphs 5 and 15 of the lease. The language of the lease relating to such an allegation states that the lessee shall not "use or allow the premises to be used for any improper, immoral, unlawful or objectionable *purpose.* " (Italics added.) Assuming, arguendo, that Wells Fargo did set the temperature on the premises outside the limits set by Department of Energy regulations, according to *Deutsch,* some conduct which may be unlawful in and of itself will not also constitute a violation of a lease provision prohibiting illegal conduct which justifies termination of the lease.

A covenant prohibiting use of the premises in violation of law serves "to protect the lessors' interest in the demised premises by limiting the functional use of the property. Such a provision ensures that the lessee will harm neither the physical attributes nor the reputation of the property in question. In addition, it serves as an additional assurance to the lessor that the lessee will utilize the demised premises in a manner conducive to the

lessor's interest so as to secure the continued payment of the rental obligations." (*Deutsch* v. *Phillips Petroleum Co., supra,* 56 Cal.App.3d at p. 591.)

**(2b)** Here, Wells Fargo's alleged violation of the Department of Energy regulation does not threaten the physical safety of the property, nor is it the type of unlawful criminal activity which would stigmatize the premises.[5] Further, appellants have not alleged facts to indicate their continued receipt of rent was in any way impaired merely because Wells Fargo reset the temperature on the premises.

Moreover, "[u]nless the lease specifically limits the use of the property to a particular purpose, or that restriction is necessarily inferred from the language which is employed, the lease may not be forfeited on account of the mere use of the property for another purpose even though that be an illegal use prohibited by statute, for the reasons said forfeitures of leases are not favored by the law." (*Keating* v. *Preston* (1940) 42 Cal.App.2d 110, 115 [108 P.2d 479].) In the instant case, the lease limits the use of the property to "general office purposes and data processing" and that is exactly the functional purpose for which this property is being used by Wells Fargo.

In accordance with Civil Code section 1442, we must construe the forfeiture provision of the lease against appellants, the parties invoking it. In doing so, we find that the conduct alleged in count 3 of the complaint represents a mere ancillary legal violation which, as a matter of law, fails to constitute a use of the premises for an "improper, immoral, unlawful or objectionable purpose" under the lease.

Further, such conduct fails, as a matter of law, to state a cause of action for unlawful detainer pursuant to subdivision 4 of section 1161, as alleged in count 2.[6] ■ It is well settled that courts must give effect to statutes according to the usual, ordinary import of the language employed in framing

---

[5]In fact, a Los Angeles newspaper article, submitted in support of Wells Fargo's motion for summary judgment, indicated there were no citations or convictions under Department of Energy Regulation, section 490.12 during the entire time it was in effect.

[6]The court in *Deutsch* v. *Phillips Petroleum Co., supra,* 56 Cal.App.3d 586, found that an antitrust violation would not fall within the proscription in Code of Civil Procedure section 1161, subdivision 4 against "using leased premises for an unlawful purpose." Focusing on what constitutes the requisite "use" of the premises, the court determined that "this statutory language requires the physical use the demised premises for some unlawful purpose. (Cf. *Lituchy* v. *Lathers,* 35 Misc.2d 556 [232 N.Y.S.2d 627], in which the court stated: 'The term "use" of premises for illegal purposes implies doing of something customarily or habitually *upon* the premises.' (Italics added).) While the asserted antitrust violation clearly qualifies as 'unlawful,' it is not a '"use" of the premises.'" (*Deutsch* v. *Phillips Petroleum Co., supra,* 56 Cal.App.3d at p. 589, fn. 2.) In this case, we must determine what conduct by lessees is sufficient to constitute an "unlawful purpose."

them, without interpreting the words of the statute to accomplish a purpose that does not appear on its face. (*Sinnamon* v. *McKay* (1983) 142 Cal.App.3d 847, 851 [191 Cal.Rptr. 295].) **(2c)** Thus, we are unable to construe the words "unlawful purpose" in subdivision 4 of section 1161, to encompass such a minor regulatory violation. Accordingly, we hold that Wells Fargo's alleged violation of the Department of Energy regulation, cannot sustain an unlawful detainer action under the statute.

III.

*The complaint failed to state a cause of action for unlawful detainer based on "waste."*

█ Appellants argue they have stated a cause of action for unlawful detainer based on "waste" under both the lease provisions (count 3) and the provisions of Code of Civil Procedure section 1161, subdivision 4 (count 1).

The complaint alleges the following repeated acts of waste by Wells Fargo: (1) tampering with the temperature control on the premises, causing (a) simultaneous heating and cooling, (b) damage to the plenum temperature control, and (c) damage to the thermostat; (2) leaving office machinery running after regular work hours; and (3) using and installing lights without the lessor's express authorization.

Wells Fargo argues that in order to constitute actionable waste, a lessee's conduct must result in permanent injury to the property. It urges that since the complaint does not allege facts to show that its conduct caused substantial depreciation in the market value of the land, as a matter of law, an unlawful detainer action based on waste cannot be maintained under Code of Civil Procedure section 1161, subdivision 4.

Subdivision 4 is a codification of the common law rule that a tenant must use leased property in such a way as to avoid waste. (Civ. Code, § 818; Rest.2d Property, § 12.2, subd. (1).) █ An action for damages resulting from waste can only be proved " 'by evidence of acts which injuriously affect the market value of the property.' " (*Eastman* v. *Peterson* (1968) 268 Cal.App.2d 169, 175 [73 Cal.Rptr. 803].) Such evidence must show that the market value is substantially or permanently diminished or depreciated. (*Smith* v. *Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769, 776-777 [184 Cal.Rptr. 308].) █ Accordingly, a similar showing is required to sustain an action for unlawful detainer based specifically on allegations of waste.

We must construe the ambiguous concept of "waste" in order to avoid a forfeiture of the lease, if at all possible. (*Smith* v. *Baker* (1950) 95 Cal.App.2d 877, 883 [214 P.2d 94]; Civ. Code, § 1442.)

Here, Wells Fargo's alleged conduct would not cause depreciation of the premises nor a substantial decrease in its market value such that a forfeiture of the lease is warranted. Appellants' allegation that the thermostats and temperature controls were physically damaged, if true, shows only a temporary condition. Further, appellants' allegations that Wells Fargo installed and used light fixtures and bulbs without appellants' authorization does not show that the "physical condition" of the premises was injuriously affected. (See Rest.2d Property, § 12.2, subd. (1).) Finally, appellants' allegation that Wells Fargo used their office machinery after work hours is also unavailing, as the lease impliedly condoned such use by providing for heat and air conditioning, as reasonably required, on a seven-day, twenty-four-hour basis.

Therefore, we hold there was no injury to the premises which could properly be termed "waste." Accordingly, no action for unlawful detainer based on waste may be maintained under either the lease or Code of Civil Procedure section 1161, subdivision 4.

Inasmuch as we hold that appellants' complaint is insufficient to state a cause of action for unlawful detainer on any theory, the summary judgment in favor of Wells Fargo was proper.

We need not reach appellants' other contentions on appeal. (*C. L. Smith Co.* v. *Roger Ducharme, Inc.*, *supra*, 65 Cal.App.3d 735.)

DISPOSITION

The judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.