Filed 7/24/13  Pacific Mercantile Bank v. Cahbad of California CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PACIFIC MERCANTILE BANK, | |
| Plaintiff and Respondent, | E055670 |
| v. | (Super.Ct.No. UDDS1106368) |
| CHABAD OF CALIFORNIA et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Reversed.

Michael J. Simkin for Defendants and Appellants.

The Wolf Firm and Joseph J. Nardulli for Plaintiff and Respondent.

This is an unlawful detainer action.  In November 2011, plaintiff and respondent Pacific Merchantile Bank (the Bank) foreclosed on property owned by defendant and appellant Chabad of California (Chabad) near Running Springs.  Defendant and appellant Asher Asayag was a tenant of Chabad and caretaker of the property.  The foreclosure sale was completed on November 30, 2011.

1

In December 2011, the Bank filed an unlawful detainer complaint against Chabad. On January 11, 2012, the trial court granted a motion for summary judgment filed by the Bank. Chabad and Asayag appeal from the ensuing judgment.

I

STANDARD OF REVIEW

The standard of review is well stated in *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89: "Summary judgment provides 'courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' [Citation.] A summary judgment motion 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] 'The pleadings determine the issues to be addressed by a summary judgment motion [citation], and the declarations filed in connection with such motion "must be directed to the issues raised by the pleadings."' [Citation.] [¶] The moving party 'bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.' [Citations.] Defendants moving for summary judgment . . . meet this burden by presenting evidence demonstrating that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to the action. [Citations.] Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists with regard to that cause of action or defense. [Citations.] Material facts are those that relate to the issues in

2

the case as framed by the pleadings.  [Citation.]  In ruling on the motion, the court must consider the evidence and inferences reasonably drawn from the evidence in the light most favorable to the party opposing the motion.  [Citation.]  [¶]  We review an order granting summary judgment de novo, considering all the evidence set forth in the moving and opposition papers, except that to which objections have been made and sustained.  [Citations.]  In undertaking our independent review, we apply the same three-step analysis as the trial court.  First, we identify the issues framed by the pleadings.  Next, we determine whether the moving party has established facts justifying judgment in its favor.  Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact.  [Citations.]  'We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale.'  [Citation.]"  (*Id.* at pp. 100-101; see also Code Civ. Proc., § 437c, subd. (c);[1] *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502-503.)

In unlawful detainer proceedings under section 1161, the proceedings are streamlined, but the motion is granted or denied on the same basis as a motion under section 437c.  (§ 1170.7; Cal. Rules of Court, rule 3.1351.)

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

## II

## UNDISPUTED FACTS

Chabad owned the subject property for many years. The property includes 80,000 square feet of structures, 18 buildings, 6 homes, and a lawful cemetery near Running Springs. A conditional use permit limits the use of the property to a year-round private residential school for middle or high school age children. Asayag was caretaker of the premises and had lived there since 2006.

In 2007, the Bank loaned Chabad $8.25 million. The loan was secured by a deed of trust on the property. On June 14, 2011, the Bank recorded a notice of default and election to sell under the deed of trust. On November 30, 2011, the property was sold to the Bank at a foreclosure sale. On December 8, 2011, a trustee's deed upon sale was recorded. This unlawful detainer action was filed on December 12, 2011.

## III

## THE TRIAL COURT'S RULINGS

The Bank's motion for summary judgment was filed on or about January 5, 2012. After the required responses were filed, the motion was heard on January 11, 2012.

The trial court granted the motion for summary judgment. In a subsequent order prepared by the Bank, the court found there was no triable issue of material fact and that the Bank was entitled to judgment as a matter of law. After reciting the basic facts stated above, the court found that "the Trustee gave notice in the manner and form required by

4

Civil Code section 2924 *et. seq*., that the Property would be sold at public auction on October 20, 2011, to satisfy the obligations secured by Deed of Trust."

The sale was actually held on November 30, 2011. The order states: "On December 6, 2011, after Plaintiff's title was perfected, Plaintiff caused to be served on Defendants a Notice to Quit . . . requiring them to quit and deliver up possession of the premises to Plaintiff within 3 days after service of the Notice."

After finding that more than three days had passed and that defendants remained in possession of the property, the trial court ordered that the Bank be given possession of the property after a 30-day stay to allow Chabad to vacate the premises.

IV

ISSUES

Chabad states: "The primary issues in this litigation and the motion for summary judgment included Respondent's improper service of the 3 day notice, failure to name or serve a notice to terminate the tenancy of Asayag, and failure to comply with several statutory requirements concerning the foreclosure sale and notice to tenants on the premises."

The Bank argues that the trial court did not err and that there were no triable issues of fact as to notice or title to the property.

We think it clear that the Bank has met its initial burden of establishing facts justifying an unlawful detainer judgment in its favor. The burden therefore shifts to Chabad to demonstrate the existence of triable issues of material fact.

5

Chabad argues that the trial court erred in the way it heard and decided the motion for summary judgment. It also argues that we must review the case de novo to determine whether a triable issue of material fact exists and that such a review shows the existence of factual issues.

Emphasizing that Chabad's two sets of issues are different, we will proceed to first consider the alleged errors of the trial court.

V

CHABAD'S ARGUMENT THAT THE TRIAL COURT ERRED

A.      *Did the Trial Court Fail to Follow Section 437c, Subdivision (g)?*

Section 437c, subdivision (g) states, in relevant part: "Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proferred in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists. The court shall also state its reasons for any other determination. The court shall record its determination by court reporter or written order."

Chabad argues that the trial court did not specify reasons for its determination in its minute order or the order granting summary judgment. The argument boils down to an attack on the order prepared by the Bank and signed by the trial court.

6

The order, which was prepared by the Bank, states that "Plaintiff, in support of its motion, proffered evidence that established each element necessary to sustain judgment it its favor . . . ." It then lists the evidence supporting the trial court's conclusion.

The order fails to refer to any evidence in opposition to the motion, as required by section 437c, subdivision (g).

The Bank points out that section 437c, subdivision (g) specifically allows the trial court to orally state the reasons for its determination. In ruling on the motion, the trial court said: "I thoroughly went through the files, the documents that had been filed in this matter. And I . . . took judicial notice of those documents that were proper to take notice of. . . . [T]he Court found that . . . there was proper service that was done and perfected on all of these documents that were filed with the Court and noticed to the parties." The court then overruled all of Chabad's evidentiary objections and found there were no triable issues of fact.

The trial court failed to refer to any evidence submitted by Chabad, particularly on the notice issues. It also overruled all of Chabad's evidentiary objections.

The Bank cites *Barton v. Elexsys Internat., Inc.* (1998) 62 Cal.App.4th 1182. In that case, the trial court declined to issue formal rulings on evidentiary objections but listed specific undisputed evidence supporting its decision. (*Id.* at p. 1194.) The appellate court affirmed, finding no triable issues of material fact. (*Ibid.*)

However, the trial court's ruling in *Barton* was based on *Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, a case that was subsequently overruled "to

7

the extent it permits the trial court to avoid ruling on specific evidentiary objections." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 8, overruled in part in *Biljac Associates v. First Interstate Bank, supra,* 218 Cal.App.3d 1410; see also *Demps v. San Francisco Housing Authority* (2007) 149 Cal.App.4th 564 [court that authored *Biljac* rejects it]; *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243 [court that authored *Biljac* decides a case in which 764 specific evidentiary objections were made].)

Chabad cites *Young v. Superior Court* (1986) 179 Cal.App.3d 28. In that case, the appellate court discussed the 1983 amendments to section 437c and issued a writ of mandate ordering the trial court to comply with section 437c, subdivision (g). (*Young,* at p. 33.)

Chabad also cites *Tera Pharmaceuticals, Inc. v. Superior Court* (1985) 170 Cal.App.3d 530. In *Tera Pharmaceuticals*, the appellate court also issued a writ of mandate ordering compliance with section 437c, subdivision (g). (*Tera Pharmaceuticals,* at p. 532.) The court stated that the trial court's order "fail[s] to indicate whether any issues raised by the motions are without substantial controversy, [and] it completely fails to detail the conflicting evidence regarding each triable issue of fact. In order to fulfill the statute's purpose, the order must identify 'a conflict in the evidence . . . by reference to the evidence in support of a particular asserted fact and the evidence in opposition to that fact.' [Citation.]" (*Ibid.*)

We agree with Chabad that the trial court failed to comply with section 437c, subdivision (g) by failing to cite the undisputed evidence and the conflicting evidence on the factual issues, and particularly on the notice issue discussed below.

The Bank contends any error is harmless, citing *Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 448-449:  "The court's failure to provide a sufficient statement of reasons is not automatic grounds for reversal, since '"[i]t is the validity of the ruling which is reviewable and not the reasons therefor.  [Citation.]"'  [Citations.]  'The lack of a statement of reasons presents no harm where . . . our independent review establishes the validity of the judgment.'  [Citations.]"

We discuss the applicability of the harmless error rule in connection with our de novo review below.

B.      *Did the Trial Court Fail to Strictly Construe the Moving Papers and Liberally Construe the Opposing Papers?*

Chabad next argues that the trial court failed to liberally construe its evidence in opposition to the summary judgment motion and failed to resolve doubts concerning the evidence in its favor.  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717; *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 19.)

While the principle is unassailable, Chabad's application of it seems to be based on the theory that the trial court erred by not finding in its favor.  It argues that the trial court disregarded all of its arguments, refused to rule on its evidentiary objections, and failed to find there was conflicting evidence as to material factual issues.

9

We agree with Chabad that the trial court's failure to comply with section 437c, subdivision (g) may have made it more difficult to attack the trial court's ruling, but we find that the harmless error rule may apply. We will therefore reserve further discussion of the specific issues in connection with our de novo review.

C.     *Did the Trial Court Err in Failing to Strictly Construe the Unlawful Detainer Statutes?*

Chabad also argues that all of the provisions of the unlawful detainer statute, including the notice provisions, must be strictly construed, citing *Deutsch v. Phillips Petroleum Co.* (1976) 56 Cal.App.3d 586, 592, *Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 746-748, and *Woods-Drury, Inc. v. Superior Court* (1936) 18 Cal.App.2d 340, 344. Since the argument relates to the notice issues, we will consider it in our de novo review of those issues.

D.     *Other Alleged Errors of the Trial Court.*

Chabad argues that the trial court erred in applying Evidence Code provisions relating to notice. It also contends that the trial court refused to comply with the portion of Code of Civil Procedure section 437c regarding contrary inferences which may be drawn from the evidence. It also again objects to the trial court's blanket overruling of its evidentiary objections. Finally, Chabad argues that the trial court failed to consider its declarations in opposition to the motion.

10

All of these issues are related to the basic question of whether proper notice was given or to the question of whether other material factual issues exist.  We therefore turn to our de novo review.

VI

DID CHABAD DEMONSTRATE THE EXISTENCE OF

MATERIAL FACTUAL ISSUES?

As noted above, Chabad's primary issue is the Bank's allegedly improper service of a three-day notice to vacate the premises.  The Bank's statement of undisputed facts states:  "On December 6, 2011, after Plaintiff's title was perfected, Plaintiff caused to be served on Defendants a Notice to Quit requiring them to quit and deliver up possession of the premises to Plaintiff within 3 days after service of the Notice."  The statement cites a supporting declaration of one of the Bank's attorneys.

The statement also cites the notice to quit and its attached proof of service.  In the proof of service, the registered California process server states:  "I served the party:  [¶] d.  by other means [o]n:  Tue., Dec. 06, 2011 at: 10:05 AM by Posting (CCP 1162) in a conspicuous place, having been unable to ascertain a place of business or to find a person of suitable age or discretion[.]"  (Italics omitted.)  The declaration of the process server was also submitted.

A certificate of mailing of the notice to quit by another registered process server is attached to the notice to quit.  The declaration of the process server who mailed the notice was also submitted.

11

In both notices, the person served is described as "Chabad of California, a California Corporation and all occupant(s), tenants, or subtenants." (Capitalization omitted.)

In its separate statement of material facts, Chabad alleged that neither Chabad nor Asayag was served with a notice to quit. Asayag's supporting declaration clearly states, in detail, that he was not personally served with the notice to quit, that he never received such a notice by mail, that no such notice was posted on any of the structures on the property, and that no such notice was posted on the front gate. The president of Chabad also submitted a declaration denying that the notice to quit was served.

The trial court did not discuss these conflicting declarations. It merely stated: "I find that there is adequate service based upon the proof of services they've filed with the Court. [¶] I find that they were done by a registered process server. That once they're registered, you know, they're basically noted as being reputable in what they testify to in this matter."

As Chabad points out, Evidence Code section 647 states: "The return of a process server registered pursuant to Chapter 16 (commencing with Section 22350) of Division 8 of the Business and Professions Code upon process or notice establishes a presumption, affecting the burden of producing evidence, of the facts stated in the return."

Evidence Code section 641 states: "A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail." This is also a presumption affecting the burden of producing evidence. (Evid. Code, § 630.)

12

Evidence Code section 604 states: "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate."

It is therefore clear that Chabad's declaration created a factual issue which required resolution at trial. The trial court erred by deciding the factual issue, rather than merely identifying it.

In *Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, the three-day notice was served by a registered process server. (*Id.* at p. 1419.) The appellate court reversed because the trial court excluded the proof of service as hearsay. (*Ibid.*) The appellate court then applied the presumption of Evidence Code section 647 to find there was evidence of service. (*Palm Property Investments, LLC v. Yadegar, supra,* at p. 1427.) It also found that a denial of service in the answer was insufficient: the defendants had to produce evidence to rebut the presumption of Evidence Code section 647. (*Palm Property Investments, LLC v. Yadegar, supra,* at p. 1428.) The court found that the proof of service should have been admitted and the trial court should have applied the presumption of Evidence Code section 647. (*Palm Property Investments,*

13

*LLC v. Yadegar, supra,* at p. 1424.)  It therefore reversed and remanded the case for retrial.  (*Ibid.*)

In the present case, the requisite evidence of nonreceipt was offered, and the presumption of Evidence Code section 647 should have disappeared from the case. "Upon presentation of appellant's detailed, credible, and unimpeached evidence of no actual notice—the *presumption* of such notice (Evid. Code, § 641) ceased to exist.  (Evid. Code, § 604.)  The only remaining effect of the 'Proof of Service' declaration was to enable the trial court to draw 'any inference that may be *appropriate*.'  (*Ibid.*)"  (*Bonzer v. City of Huntington Park* (1993) 20 Cal.App.4th 1474, 1481.)

Chabad's second notice issue is that the Bank failed to name Asayag as a defendant in the unlawful detainer action.  The only necessary defendants in an unlawful detainer action are the tenant and any subtenants.  (§ 1164.)  However, the plaintiff may also name known occupants of the property.  As to unknown occupants, the plaintiff may proceed against them as Doe defendants, or it may use the more advantageous procedure of section 1174.3.  (See generally Friedman et al., Cal. Practice Guide:  Landlord-Tenant (The Rutter Group 2012) ¶¶ 8:33 to 8:37.2, pp. 8-13 to 8-16.)

In this case the Bank only named Chabad and Doe defendants in the complaint.  It did not serve the form required by section 415.46 (prejudgment claim of right to possession) and thus did not elect to take advantage of the section 1174.3 procedures. The complaint does not refer to tenants or occupants of the property.  Although the notice to quit was addressed to tenants and occupants, the complaint did not allege existence of

14

a landlord-tenant relationship between Chabad and Asayag, nor did it identify Asayag as an occupant. (Friedman et al., Cal. Practice Guide: Landlord-Tenant, *supra*, ¶¶ 8:40 to 8.41, p. 8-17.)

It is interesting to note that the court's oral decision did not mention Asayag or any other tenants or occupants. The order signed by the trial court granted the Bank's summary judgment motion and required that a judgment be entered giving possession to the Bank. The order did not mention Asayag or any other tenants or occupants. Finally, the judgment states: "Judgment is hereby entered in favor of Plaintiff, Pacific Merchantile Bank and against Defendant, Chabad of California, Asher Asayag and All Unnamed Occupants pursuant to C.C.P. § 415.46 providing that Plaintiff shall be given restitution and possession of the property . . . ."

Section 415.46 refers to a prejudgment claim of right to possession. In this case, although the Bank did not invoke the procedure, Asayag's attorney filed a prejudgment claim of right to possession form under section 1174.3, subdivision (a) on Asayag's behalf. By signing the form, Asayag agreed to be added as a defendant to the proceeding and he agreed that his right to occupy the property would be decided by the court. (See generally Friedman et al., Cal. Practice Guide: Landlord-Tenant, *supra*, ¶¶ 8:131.1 to 8:131.27, pp. 8-48 to 8-56.)

In any event, we agree with Chabad that there are legal and factual issues relating to the service of the three-day notice to quit on Asayag, the propriety of giving Asayag a

three-day notice rather than a 30, 60, or 90-day notice, and the procedures used to produce a judgment against him and unnamed occupants of the property.

As discussed above, several of the procedural and substantive errors of the trial court are subject to harmless error analysis. However, since we have determined that the trial court also erred in relying on the registered process server's certificate without considering the factual issue raised by the opposing declarations, we cannot conclude that the other procedural and substantive errors were harmless.

We therefore find that Chabad met its burden of demonstrating the existence of material factual issues requiring a trial.[2]

VII

OTHER ISSUES

A.    *Request for Judicial Notice.*

On September 28, 2012, Chabad filed a motion to augment the record on appeal with a transcript of a hearing held on August 28, 2012. At the hearing, the trial court stated that the property was "both residential and commercial[.]" Chabad argues that this statement directly supports its position that the premises were residential and that Asayag was a tenant entitled to proper notice to terminate his tenancy.

By order filed on October 15, 2012, we deemed the motion to be a request that we take judicial notice of the subsequent trial court proceedings. We reserved ruling for

---

[2] It is unfortunate that these issues were raised on summary judgment, as trial was scheduled for the week following the summary judgment hearing.

16

consideration with the appeal and we subsequently allowed the Bank to file supplemental briefing on the issues raised by the request for judicial notice.

After consideration of the arguments, we agree with the Bank that the court's remark at the August 28, 2012, hearing is irrelevant to any of the issues in this appeal. As the Bank points out, our task is to review the propriety of the summary judgment on the basis of the documents and evidence before the trial court at that time.

The Bank relies on *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800: "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered. [Citation.] This rule preserves an orderly system of appellate procedure by preventing litigants from circumventing the normal sequence of litigation. However, the rule is somewhat flexible; courts have not hesitated to consider postjudgment events when legislative changes have occurred subsequent to a judgment [citations] or when subsequent events have caused issues to become moot [citation]." (*Id.* at p. 813.)

"'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.]'" (*Wilson v. 21st Century Ins. Co., supra,* 42 Cal.4th at pp. 716-717.)

As *Wilson* demonstrates, our Supreme Court has confirmed the principle that "'[r]eviewing courts generally do not take judicial notice of evidence not presented to the

17

trial court' absent exceptional circumstances. [Citation.]" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) *Haworth* then quotes the rule stated in *Reserve Insurance Co.* (*Haworth v. Superior Court, supra,* at p. 379, fn. 2.)

Finding no exceptional circumstances here, we deny the request for judicial notice.

B.      *Suggestion of Mootness.*

In a footnote, the Bank states: "Since entry of Judgment, the San Bernardino County Sheriff has evicted Appellants from the Property. Appellants seek to reverse the Court's Judgment so they can re-enter the Property." This footnote raises a number of questions as to how the Bank was able to convince the sheriff to enforce the judgment while the case is pending on appeal.

Since Chabad has been evicted from the property, it can be argued that the unlawful detainer action is moot. As noted in the *Reserve Insurance Co.* case quoted above, mootness can be a reason for taking judicial notice of subsequent events. (*Reserve Insurance Co. v. Pisciotta, supra*, 30 Cal.3d at p. 813.) However neither party has raised the issue so we do not have any argument or record which would allow us to discuss it further.

C.      *Chabad's Attack on the Foreclosure Sale.*

Chabad argues that the Bank failed "to comply with several statutory requirements concerning the foreclosure sale . . . ." It cites its trial court argument that title to the property was not duly perfected by the Bank in accordance with Civil Code sections 2924 and 2924c. It briefly renews the argument in its opening brief.

18

The Bank cites *Cheney v. Trauzettel* (1937) 9 Cal.2d 158.  Our Supreme Court said:  "The trial court properly held that in the summary proceeding in unlawful detainer the right to possession alone was involved, and the broad question of title could not be raised and litigated by cross-complaint or affirmative defense.  [Citations.]  It is true that where the purchaser at a trustee's sale proceeds under section 1161a of the Code of Civil Procedure he must prove his acquisition of title by purchase at the sale; but it is only to this limited extent, as provided by the statute, that the title may be litigated in such a proceeding.  [Citations.]"  (*Id.* at p. 159; see also *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255, citing § 1161a, subd. (b)(3).)  Section 1161a, subdivision (b)(3) allows a tenant to argue that title under the sale has not been duly perfected.

We agree with the Bank that it established title by purchase at a trustee's sale.  A general attack on the Bank's title should not be heard in summary unlawful detainer proceedings but may properly be presented in a separate action.  (*Cheney v. Trauzettel, supra*, 9 Cal.2d at p. 161.)  As noted above, the statute allows the tenant to argue that title under the sale has not been duly perfected.

Civil Code section 2924, subdivision (c), provides:  "A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in

19

favor of bona fide purchasers and encumbrancers for value and without notice."  The

deed in this case states:  "All requirements of law regarding the mailing of copies of

notices and the posting and publication of copies of the Notice of Sale have been

complied with."

VIII

DISPOSITION

The judgment is reversed.  Appellants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
Acting P. J.

We concur:


MILLER_____
J.


CODRINGTON_____
J.