Filed 11/20/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MOUNTAIN AIR ENTERPRISES, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SUNDOWNER TOWERS, LLC et al., <br><br> Defendants and Appellants. | A138306 <br><br> (Marin County <br> Super. Ct. No. CIV081957) |

Plaintiff Mountain Air Enterprises, LLC (Mountain Air) sued defendants Sundowner Towers, LLC (Sundowner), Bijan Madjlessi and Glenn Larsen for breach of a contract to purchase real estate. As affirmative defenses, defendants alleged that the contract was illegal and that it was extinguished by novation when the parties entered into a later option agreement. Following a bench trial, the court ruled in favor of defendants on both defenses.

When defendants moved for an award of attorney fees, the trial court denied the motion, holding that because of illegality the attorney fees clause in the initial contract could have no effect and that the attorney fees clause in the option agreement did not encompass defendants' affirmative defense.

Defendants appeal from the trial court's denial of their motion to award attorney fees, contending that they are entitled to fees under both the illegal contract and the option agreement. We agree with the trial court that defendants may not be awarded attorney fees under the illegal contract, but conclude that the trial court erred when it interpreted the attorney fees clause of the option agreement to exclude defendants' affirmative defense of novation.

1

## BACKGROUND[1]

Mountain Air is a single-purpose California limited liability company. Steven Scarpa is Mountain Air's sole member. Sundowner is a Nevada limited liability company, and its members are Madjlessi and Larsen.

Prior to February 17, 2006, two buildings were located on a single parcel of real property located at 450 Arlington Avenue in Reno, Nevada (the property). On February 17, 2006, by the recordation of a map, the property became three separate legal parcels: the north tower, the south tower, and the casino building.

On December 12, 2005, before the subdivision of the property into separate parcels, Scarpa and Sundowner entered into two separate written agreements: (1) an agreement whereby Sundowner agreed to sell the south tower to Scarpa for $7 million (the purchase agreement), and (2) an agreement whereby Sundowner agreed to later repurchase the south tower from Scarpa for $7 million plus an "inflation factor" of 12 percent (the repurchase agreement). Madjlessi and Larsen guaranteed Sundowner's obligations under the repurchase agreement. Scarpa's rights under the two agreements were subsequently assigned to Mountain Air.

On or about April 25, 2006, Mountain Air, as seller, and Larsen and Madjlessi, as buyers (Sundowner was not a party), executed a written option agreement whereby Mountain Air granted Larsen and Madjlessi the exclusive right to purchase the south tower during the option period (the option agreement). Madjlessi and Larsen personally guaranteed their obligations under the option agreement.

Sundowner acquired the south tower from a third party on April 27, 2006, and transferred it to Mountain Air the same day pursuant to the purchase agreement.

---

[1] The trial court's final statement of decision (FSOD) sets forth most of the relevant facts. Plaintiff voluntarily dismissed its appeal of the trial court's judgment, and defendant registered no objection to the facts as set forth in the FSOD. It does not appear that any of the underlying facts as stated in the FSOD are challenged in this appeal. Accordingly, we derive most of the background facts from the FSOD. (See *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 761.)

Sundowner never repurchased the south tower, and Mountain Air filed suit. The operative second amended complaint alleged three causes of action: (1) specific performance of the repurchase agreement, (2) breach of the guaranty of the repurchase agreement, and (3) breach of the repurchase agreement. The first and third causes of action were asserted against all defendants. The second cause of action was asserted against Madjlessi and Larsen.

Defendants raised two affirmative defenses: (1) that the option agreement was a novation, extinguishing the repurchase agreement; and (2) that the repurchase agreement was illegal and therefore void and unenforceable.

A bench trial was held over 13 days between April 26, 2011, and March 22, 2012. The trial court ruled in defendants' favor on both affirmative defenses in its FSOD, filed on October 10, 2012.

The trial court found that the repurchase agreement could not "be enforced because it was illegal and void under both Nevada and California law." Both Nevada and California prohibit any sale of real property without a subdivision map first being recorded, or unless the seller is contractually obligated to obtain the subdivision map before the transfer of title or possession. The repurchase agreement violated the law because it was executed before the map was recorded and did not require either party to prepare or record a map.

The trial court also held that the option agreement was a novation. It found "by clear and convincing evidence that the parties treated the Repurchase Agreement as having been extinguished and the Option Agreement as the operative agreement. After December 12, 2005, the terms of the Repurchase Agreement were ignored and the terms of the Option Agreement were followed." It also held that the integration clause of the option agreement was unambiguous in expressly superseding all prior agreements relating to the same subject matter, including the repurchase agreement, which involved precisely the same subject matter—that is, the purchase of the south tower. The court also found that the option agreement contained materially different terms from the repurchase agreement, not the least of which was that "the form of the agreement

3

changed from a purchase and sale agreement to an option." The consequence of this change, of course, was that defendants were no longer obligated to purchase the south tower; they had the right but not the obligation to do so. This and other differences between the repurchase and option agreements supported the trial court's conclusion that the option agreement was a novation.

Also on October 10, 2012, the trial court entered judgment in favor of defendants.

On December 7, 2012, defendants filed a motion seeking an order determining that they were the prevailing parties and an award of attorney fees pursuant to attorney fees clauses in both the repurchase and option agreements. Mountain Air opposed the motion. On March 13, 2013, the court issued a tentative ruling denying an award of attorney fees. On March 20, 2013, the court issued an order incorporating the tentative ruling as its decision.

Defendants timely filed a notice of appeal on March 29, 2013.[2]

## DISCUSSION

Defendants sought attorney fees under two theories: (1) because the case sounded in contract and the repurchase agreement contained an attorney fees provision, they are entitled to attorney fees pursuant to Civil Code section 1717; and (2) because they raised an affirmative defense involving the option contract, which also contained an attorney fees provision, they are entitled to attorney fees under Code of Civil Procedure section 1021, at least to the extent the litigation involved the affirmative defense.

Mountain Air contests defendants' entitlement to fees under either theory and also maintains that the appeal should be dismissed because the record in this case is inadequate. We first address the state of the record.

---

[2] Mountain Air filed a notice of appeal following the entry of judgment in this case. That appeal was given Court of Appeal case No. A137375, and a record was filed. Mountain Air voluntarily dismissed that appeal before filing an opening brief. In the record for this appeal, defendants incorporate by reference parts of the record filed in Mountain Air's earlier withdrawn merits appeal.

4

**I.** *The State of the Record*

Defendants elected to proceed in this case with an appellants' appendix pursuant to California Rules of Court, rule 8.124,[3] and a reporter's transcript of the hearing concerning attorney fees pursuant to rule 8.130. The rules governing the record on appeal allow an appellant to incorporate portions of the record in another case or of a prior appeal in the same case. If an appellant proceeds with an appellant's appendix, incorporation by reference is governed by rule 8.124(b)(2), requiring that the appendix provide the name and number of the prior appeal and that parts to be incorporated by reference be identified both in the body of the appendix and in a separate section at the end of the index. In this case, defendants incorporate by reference portions of the record of Mountain Air's prior appeal, which was dismissed. Mountain Air does not maintain that defendants failed to conform to the requirements of rule 8.124(b)(2).

Rule 8.147 governs incorporation of the record of a prior appeal when "the parties are using either a clerk's transcript under rule 8.122 or a reporter's transcript under rule 8.130." (Rule 8.147(b).) If rule 8.147(b) applies, the appellant is required to specify in its designation of the record on appeal the parts of the record in the prior appeal to be incorporated by reference—a requirement not contained in rule 8.124(b)(2). (Rule 8.147(b)(1).) Mountain Air contends that defendants failed to satisfy this requirement and the designation of the record on appeal verifies that contention. Because defendants proceeded with a reporter's transcript under rule 8.130, in addition to proceeding with an appellants' appendix, theoretically both rules 8.124(b)(2) and 8.147(b) apply.

However, rules 8.124(b)(2) and 8.147(b) serve the same purpose: to ensure that when parts of the record of a prior appeal are incorporated by reference, the parties and the court know what is being incorporated. Mountain Air cites no authority for the proposition that when both these rules apply, the appellant must satisfy the requirements of both, as opposed to complying with one or the other. Although it seems to us that requiring conformance with both rules would be duplicative, we need not decide the

---

[3] All citations to rules in this division are to the California Rules of Court.

issue. Following the filing of Mountain Air's reply brief, defendants sought to cure any potential deficiency in the record by requesting that this court take judicial notice of the parts of the prior appeal incorporated by reference. Mountain Air did not oppose that request, which we granted on March 5, 2014.[4] Accordingly, any nonconformance with the rules governing incorporation by reference has been cured.[5]

## II. *The Merits of Defendants' Claims for Attorney Fees*

### A. *Legal Standard and Background*

"A request for an award of attorney fees is entrusted to the trial court's discretion and will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence. [Citations.] Where fees are claimed under a contract allowing for their recovery, the scope of activities for which fees may be recovered is governed by the terms of the contract." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 577.) "Whether a contractual attorney fee clause provides for a fee award in a particular case is a question of contract interpretation. We interpret a contract de novo if the interpretation does not turn on the credibility of extrinsic evidence . . . ." (*Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 273 (*Windsor Pacific*).)

Civil Code section 1717 governs a fee award in an action on a contract. Subdivision (a) of that section provides, in relevant part, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing

---

[4] Courts routinely take judicial notice of records in prior appeals. (See, e.g., *People v. Kisling* (2014) 223 Cal.App.4th 544, 546, fn. 2; *People v. Wilson* (2013) 219 Cal.App.4th 500, 508, fn. 3; *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 421, fn. 2.)

[5] Mountain Air also claims "incorporation by reference was improper and ineffective because the only 'prior appeal' in this case was dismissed prior to any briefs being filed." Mountain Air cites no authority or logical reason for the proposition that if an appeal is dismissed, before or after briefs are filed, then it does not qualify as a "prior appeal."

6

party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Civil Code section 1717 is inapplicable to noncontract claims, but a contractual provision for attorney fees may still have effect if it provides for recovery of fees on noncontract claims. Code of Civil Procedure section 1021 provides, "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

## B. *Attorney Fees Pursuant to the Repurchase Agreement*

The repurchase agreement contains an attorney fees clause: "If this Agreement or the transaction contemplated herein gives rise to a lawsuit, arbitration, or other legal proceeding between the parties hereto, the prevailing party shall be entitled to recover its costs and reasonable attorney's fees in addition to any other judgment of the court or arbitrator(s). Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Agreement shall be recoverable separately from and in addition to any other amount included in such judgment and such attorneys' fees obligation is intended to be severable from the other provisions of this Agreement and to survive and not be merged into any such judgment."

The trial court ruled that defendants could not recover attorney fees based on the attorney fees clause of the repurchase agreement, relying on the "general rule . . . that if the entire contract is void for illegality, attorney fees are unavailable." In the trial court, as here, defendants cited *Yuba Cypress Housing Partners, Ltd. v. Area Developers* (2002) 98 Cal.App.4th 1077 (*Yuba Cypress*), *Black Hills Investments, Inc. v. Albertson's, Inc.* (2007) 146 Cal.App.4th 883 (*Black Hills*), and *Sixells, LLC v. Cannery Business Park* (2008) 170 Cal.App.4th 648 (*Sixells*) in support of their claim for attorney fees under the void repurchase agreement.

7

*Yuba Cypress* explained the general rules governing attorney fees clauses in invalid and illegal contracts:  "Ordinarily, in an action on a contract providing for an award of attorney fees, Civil Code section 1717 entitles the prevailing party to attorney fees, even when the party prevails on the ground that the contract is inapplicable, invalid, unenforceable, or nonexistent, if the other party would have been entitled to attorney fees had it prevailed.  [Citation.]  This general rule 'serves to effectuate the purpose underlying section 1717,' which was enacted to establish mutuality of remedy where a contractual attorney fee clause makes recovery of fees available for only one party.  [Citation.]  [¶] However, . . . 'a different rule applies where a contract is held unenforceable because of illegality.'  [Citations.]  'A party to a contract who successfully argues its illegality stands on different ground than a party who prevails in an action on a contract by convincing the court the contract is inapplicable, invalid, nonexistent or unenforceable for reasons other than illegality.'  [Citation.]  Because courts generally will not enforce an illegal contract, there is no need for a mutual right to attorney fees since neither party can enforce the agreement.  [Citation.]"  (*Yuba Cypress*, *supra*, 98 Cal.App.4th at pp. 1081-1082.)

The Civil Code creates three categories of illegal contracts:  (1) those "[c]ontrary to an express provision of law"; (2) those "[c]ontrary to the policy of express law, though not expressly prohibited; and (3) those "[o]therwise contrary to good morals."  (Civ. Code, § 1667.)  The repurchase agreement falls into the first category because it violated subdivision map laws.

"A somewhat artificial distinction is made between contracts malum in se—(against good morals), and those which are malum prohibitum—(prohibited by statute).  [¶] The distinction has little significance save where the parties are not *in pari delicto* [i.e., not in equal wrong with the other] [citation].  This is because, as a general rule, the contract itself is *void*, whether malum in se or malum prohibitum."  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 431, p. 473.)

*Yuba Cypress* serves to illustrate that a contract that is malum prohibitum may not be wholly void when the parties are not in pari delicto.  The case involved a real estate

8

contract that was unlawful because the defendant violated the Subdivided Lands Act (Bus. & Prof. Code, § 11000 et seq.). (*Yuba Cypress*, *supra*, 98 Cal.App.4th at p. 1080.) The plaintiff sought to rescind the contract and, after prevailing, sought attorney fees pursuant to an attorney fees clause. (*Ibid.*) Even though the contract was illegal, the *Yuba Cypress* court nevertheless held that the plaintiff was entitled to attorney fees: " '[H]ow the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved.' [Citation.] Thus, for example, 'when the Legislature enacts a statute forbidding certain conduct for the purpose of protecting one class of persons from the activities of another, a member of the protected class may maintain an action notwithstanding the fact that he has shared in the illegal transaction.' [Citation.] The protective purpose of the statute is realized by allowing the plaintiff, who is not *in pari delicto*, to enforce the contract or maintain his action against a defendant within the class primarily to be deterred. [Citation.]" (*Id.* at pp. 1082-1083, italics added.) The court noted that "the purpose of the Subdivided Lands Act is to protect members of the public who purchase lots or houses from developers." (*Id.* at p. 1083.) "Hence, when a plaintiff purchased land under a contract that does not comply with the act, courts will allow the plaintiff to enforce the contract against the seller or to disaffirm the contract. [Citation.] In other words, the contract is voidable not void; since it does not have an illegal object, it is not one which *neither* party may enforce such that an attorney fee clause contained therein also is unenforceable." (*Ibid.*) The court concluded that "[a]lthough plaintiff chose to void the contract, this does not preclude him from recovering attorney fees via the attorney fee clause in the contract. Rather, defendant, who violated the Subdivided Lands Act, is estopped from asserting the invalidity of the contract. [Citation.] Otherwise, the court will have assisted defendant in profiting from its own wrong. To deny plaintiff the attorney fees to which he is entitled as a result of the contract would permit defendant to benefit from the illegality that it created, thus disserving the goal of deterring illegal conduct." (*Ibid.*)

*Yuba Cypress* does not assist defendants because they and Mountain Air are in pari delicto. Unlike the plaintiff in *Yuba Cypress*, defendants, who are sophisticated

9

developers, shared in the drafting of the purchase and repurchase agreements and therefore were party to creating the illegality.[6] Moreover, defendants had already profited from the transaction in the equally illegal purchase agreement. In *Yuba Cypress*, denying attorney fees to the innocent plaintiff would have "permit[ted] defendant to benefit from the illegality that it created." (*Yuba Cypress*, *supra*, 98 Cal.App.4th at p. 1083.) The same is true here, but in this case *granting* defendants attorney fees pursuant to the repurchase agreement would permit them to benefit from the illegality *they* participated in creating.

On the facts of this case, *Yuba Cypress* provides no authority for an award of attorney fees to defendants. When *both* parties to an illegal contract are in pari delicto, there is no ground in public policy not to apply the general rule that an illegal contract is *wholly* void and unenforceable.

*Yuba Cypress* does raise one question, however. Why were defendants, unlike the *Yuba Cypress* defendant, not "estopped from asserting the invalidity of the contract" as an affirmative defense? (*Yuba Cypress*, *supra*, 98 Cal.App.4th at p. 1083.) The reason for this also proceeds from the fact that the parties here were in pari delicto.

When a contract is illegal because it violates a statute intended to protect a class of people and the parties are not in pari delicto, then, as *Yuba Cypress* explained, an innocent member of the protected class may choose to enforce the contract and the party that created the illegality is estopped from asserting that the contract is invalid. However, when both parties are in pari delicto, as they are here, the contract is wholly void and may not be enforced by either party. In such a case, the court will block any attempt to enforce the contract. Thus, if one party brings an action to enforce the contract, the court will allow the other party to raise illegality as an affirmative defense to block enforcement. This does not mean that the defendant is less at fault than the plaintiff—it

---

[6] The repurchase agreement was drafted by an attorney who was the joint attorney of Scarpa and Madjlessi. Defendants do not dispute the trial court's finding that they are experienced developers who shared in drafting the repurchase agreement and benefited from the transaction of which it was part.

10

means only that " 'no action in *affirmance* of an illegal contract can be maintained.' " (*Kyablue v. Watkins* (2012) 210 Cal.App.4th 1288, 1295.) "[G]ranting relief 'to one who repudiates an illegal contract is entirely different from granting relief to one who seeks to enforce it.' " (*Ibid.*) When defendants sought an award of attorney fees, they sought to enforce the illegal contract and the trial court properly denied relief, just as the court properly denied relief to Mountain Air when it sought to enforce the contract.

Defendants' reliance on *Black Hills* and *Sixells*, like their reliance on *Yuba Cypress*, is misplaced. Like *Yuba Cypress*, both cases involved parties to an illegal contract that were not in pari delicto. (*Black Hills*, *supra*, 146 Cal.App.4th at p. 886 [defendant the apparent author of the illegal contract]; *Sixells*, *supra*, 170 Cal.App.4th at pp. 650-653 [plaintiff the author of the illegal contract].) In both cases, attorney fees were awarded to a party who was innocent of creating the illegality. (*Black Hills*, at p. 896; *Sixells*, at pp. 655-656.) Moreover, neither *Black Hills* nor *Sixells* discussed why attorney fees could be awarded under an illegal contract. (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134 [" ' "cases are not authority for propositions not considered" ' "].)

Because substantial evidence supported the finding that both Mountain Air and defendants shared in drafting the illegal repurchase agreement, the parties were in pari delicto. Thus, the repurchase agreement was entirely void and unenforceable, and the trial court properly denied defendants' motion to enforce the attorney fees clause of that agreement.

## C. *Attorney Fees Pursuant to the Option Agreement*

The option agreement also contains an attorney fees clause: "If any legal action or any other proceeding, including arbitration or an action for declaratory relief; is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees, expert fees and other costs incurred in that action or proceeding, in addition to any other relief to which the

11

prevailing party may be entitled." Defendants are entitled to attorney fees if this clause encompasses defendants' affirmative defense that the option agreement constituted a novation, voiding the repurchase agreement. This is a question of contract interpretation, which we review de novo because neither party cites extrinsic evidence that bears upon interpretation of the option agreement.

Courts construe contractual attorney fees clauses "apply[ing] the ordinary rules of contract interpretation." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).) "Our goal in interpreting a contract is to give effect to the mutual intention of the contracting parties at the time the contract was formed. (Civ. Code, § 1636.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (*Id.,* §§ 1639, 1647.) . . . We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (*Id.*, § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (*Id.*, § 1638.)" (*Windsor Pacific*, *supra*, 213 Cal.App.4th at p. 274.)[7]

---

[7] Our colleague dissents, contending we failed to "strictly construe" the scope of the attorney fees clause, which he asserts we are required to do. He does so immediately after quoting language in *People ex rel. Dept. of Corporations v. Speedee Oil Change Systems, Inc.* (2007) 147 Cal.App.4th 424, 429, which in turn quotes *Santisas, supra*, at p. 608. (Dis. opn. *post*, at pp. 6-7.) In *Santisas*, the California Supreme Court made plain that ordinary principles of contract construction govern interpretation of contractual attorney fees clauses. The *Santisas* Court stated, "To answer this question [whether the fee agreement covers the dispute], we apply the ordinary rules of contract interpretation." (*Id.* at p. 608.) Not strict construction. Not liberal construction. "[T]he ordinary rules of contract interpretation."

The dissent cites 7 Witkin, California Procedure (5th ed. 2008) Judgment, § 168, p. 712, for the supposed strict construction rule. That section, entitled "Proceedings Covered," includes the subheading "Scope of Provision Strictly Construed." It cites *Stockton Theatres Inc. v. Palermo* (1954) 124 Cal.App.2d 353 and "[o]ther cases in which the attorneys' fee provision in a contract was [according to the treatise authors] strictly construed." Not one of the cited Court of Appeal opinions holds, states or otherwise stands for the proposition that courts should strictly construe attorney fees clauses. What they do stand for is the unremarkable proposition that courts will not

There are two aspects to the interpretation issue:  first, whether an affirmative defense may constitute an "action or any other proceeding . . . brought" within the meaning of the option agreement's fees provision and second, whether defendants' affirmative defense of novation was brought either "for the enforcement of [the option] Agreement" or "because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of [the option] Agreement."  The first question concerns the form of the novation defense, and the second concerns the subject matter of the defense.  We will address each in turn.

**1.** ***The Novation Affirmative Defense was a "Legal Action or . . . Other Proceeding . . . Brought" Within the Meaning of the Option Agreement.***

Mountain Air contends that an affirmative defense does not fall within the attorney fees clause because that clause contemplates fees only for a party that files a complaint or a cross-complaint.  Mountain Air successfully urged the trial court to read the language of the fees provision narrowly, interpreting "legal action . . . brought" to exclude defenses.  However, both Mountain Air and the trial court overlooked the broad language of the provision, which includes not only an action but "any other proceeding."[8]  Even if "legal action" were construed narrowly to mean "lawsuit," inclusion of the phrase "or any other proceeding" suggests something broader.

The American Heritage Dictionary defines the noun "proceeding" as "[a] course of action; a procedure."  (The American Heritage Dictionary (4th ed. 2000) p. 1398.)  An

award fees in disputes that fall outside the express terms of a contractual fee provision.  But even if any of these decisions could be read as supporting a rule of strict construction, they would be inconsistent with the Supreme Court's decision in *Santisas*, which we follow here.

[8]  Notably, the phrase "any legal action or any other proceeding" expressly includes "an action for declaratory relief."

affirmative defense falls squarely within this definition.[9]  As courts have observed in other contexts:  " 'Proceeding' has different meanings in different contexts.  Narrowly, it means an action or remedy before a court.  [Citations.]  [¶] Broadly, it means 'All the steps or measures adopted in the prosecution or defense of an action.'  [Citation.]  'The word "proceeding" or "proceedings" in its general sense refers to the form and manner of conducting judicial business before a court or judicial officer.  [Citations.]  It may also refer to a mere procedural step that is part of the larger action or special proceeding.  [Citation.]'  [Citations.]  [¶] . . . In *Stonesifer v. Kilburn* (1892) 94 Cal. 33 . . . , the court stated at page 43:  '. . . "The term 'proceeding' is generally applicable to any step taken by a party in the progress of a civil action.  Anything done from the commencement to the termination is a proceeding." ' "  (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1105.)  There would be no reason to include "or any other proceeding" in the option agreement's attorney fees clause if it meant nothing more than the narrowest of these definitions; the word "proceeding" would be superfluous.  (See *Deutsch v. Phillips Petroleum Co.* (1976) 56 Cal.App.3d 586, 590 [paragraph of contract "must be construed so as to give force and effect to *every* word contained within it"].)  An answer asserting an affirmative defense is a "proceeding" within the broader meaning described in *Zellerino*.  But there is more.

That defendant's affirmative defense also constitutes a "legal action" is directly supported by *Windsor Pacific*, in which the plaintiff sued to establish its rights to a

---

    [9] The same dictionary includes specialized legal meanings as well, including "[l]egal action; litigation" and "[t]he instituting or conducting of litigation."  (The American Heritage Dictionary (4th ed. 2000) p. 1398.)  Black's Law Dictionary similarly defines "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment," "[a]ny procedural means for seeking redress from a tribunal or agency," or "[a]n act or step that is part of a larger action."  (Black's Law Dict. (10th ed. 2014) p. 1398, col. 1.)  Interpretation is generally guided by the "ordinary and popular sense" (Civ. Code, § 1644), not a technical meaning, unless there is evidence that the parties intended such a usage, which is not the case here.  But even as thus defined, a "proceeding" is broad enough to include the assertion of an affirmative defense, which is "an act or step that is part of a larger action."

prescriptive easement. (*Windsor Pacific*, *supra*, 213 Cal.App.4th at pp. 266-269.) Defendant prevailed in trial court, maintaining that a prior written agreement regarding easements (the ARE) showed plaintiff's use of access roads was not adverse for the required five-year period. (*Id.* at p. 269.) The attorney fees clause in the ARE applied to " 'any action or proceeding to enforce or interpret the provisions of this Agreement.' " (*Id.* at p. 268, fn. 1.) Defendant sought fees, which the trial court denied because the case was not an action to enforce or interpret the provisions of the ARE. (*Id.* at p. 269.)

Division Three of the Second District reversed, stating: "[W]e believe that this action is an 'action or proceeding to . . . interpret the provisions of this Agreement' within the meaning of the ARE, whether [plaintiff] seeks to enforce or interpret the ARE in its complaint or [defendant] seeks to do so in its answer. Put another way, it does not matter whether such interpretation has been sought by the allegations of a complaint or by affirmative defenses in an answer. We understand the words 'action or proceeding,' used in accordance with their ordinary and popular sense, to encompass the entire action or proceeding, including both the complaint and any responsive pleading, such as an answer. [Citations.] In our view, an action in which a party seeks to enforce or interpret a contract in connection with either a claim alleged in the complaint or a defense alleged in an answer will constitute an action to 'enforce or interpret' the contract." (*Windsor Pacific*, *supra*, 213 Cal.App.4th at pp. 274-275.)

As both parties have pointed out, *Windsor Pacific* disagreed with two earlier Second District cases: *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698 (*Exxess*) and *Gil v. Mansano* (2004) 121 Cal.App.4th 739 (*Gil*). Not surprisingly, Mountain Air relies on *Exxess* and *Gil*, while defendants argue *Windsor Pacific* and the dissenting opinion by Justice Armstrong in *Gil* articulate the better reasoned position.

*Exxess* interpreted a fees clause in a lease providing, " 'If any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder, the Prevailing Party . . . or Broker . . . shall be entitled to reasonable attorney's fees.' " (*Exxess*, *supra*, 64 Cal.App.4th at p. 702.) The lessee sued the broker claiming failure to disclose defects before the lease was executed, and the broker successfully defended by

15

invoking the "as is" clause of the lease. (*Id*. at pp. 702, 711-712.) Division One of the Second District rejected the broker's request for fees because the "as is" clause had been raised as a defense, opining that "[w]hile the 'as is' defense may have had the effect of 'enforc[ing] the terms' of the lease or 'declar[ing] rights [there]under,' [the broker] did not 'bring[ ] an action or proceeding' to accomplish those goals." (*Id*. at p. 712.) In reaching this conclusion, the court considered the definitions of "action" and "defense" as contained in Black's Law Dictionary. (*Id.* at p. 712, fn. 15.)

Six years later, another division of the Second District similarly distinguished between an action and a defense in interpreting an attorney fees clause. In *Gil*, joint venturers had entered into a purchase agreement and a release. One sued the other for fraud, and the defendant prevailed by asserting the release as an affirmative defense. (*Gil*, *supra*, 121 Cal.App.4th at p. 741.) The defendant sought fees under a clause of the release providing that " '[i]n the event action is brought to enforce the terms of this [Release], the prevailing party shall be paid his reasonable attorney[ ] fees and costs incurred therein.' " (*Id*. at p. 742.) Relying on *Exxess*, the majority characterized the language " 'brings an action to enforce the contract' [as] quite narrow"—too narrow to encompass an affirmative defense. (*Id*. at p. 744.)

Justice Armstrong dissented, stating: "As the majority notes, the laws of contract interpretation direct us to base an interpretation on the ordinary use of words [citation] and to avoid an interpretation that makes the contract unusual or extraordinary. [Citation.] I believe that by taking a magnifying glass to the word 'action' and ascribing a technical meaning to that word, the majority has violated the rules it cites. [¶] The majority impliedly finds that the parties intended that 'action' bear a technical meaning and that they knowingly agreed to only a 'narrowly drawn' fee provision. I see no basis for that implied finding. The fee provision in the release seems to be an ordinary one, in which the parties add teeth to their commitment to release all claims by providing that if there is litigation on those claims in violation of the release, the loser pays the winner's fees. In this case, there was litigation in violation of the release, which means, in my view, that fees should have been awarded. The majority has defeated, not enforced, the

16

overall meaning of the release." (*Gil*, *supra*, 121 Cal.App.4th at p. 746 (dis. opn. of Armstrong, J.).)[10]

Justice Armstrong went on to detail different meanings and scopes ascribed to the word "action" in statutes and case law, concluding that " 'action' is not limited and precise, but general and inclusive." (*Gil*, *supra*, 121 Cal.App.4th at pp. 746-747 (dis. opn. of Armstrong, J.).) He continued: "In an everyday sense, 'action' includes both an answer and an affirmative defense, for the simple reason that the two are in many ways alike. The defendant has the burden of proof on the affirmative defense just as the plaintiff does on a complaint. The rules which relate to pleading a cause of action in a complaint also apply to pleading an affirmative defense in an answer. . . . If the defendant prevails on the release defense, it will only be because the court has 'enforced' the release. . . . *Raising a release as an affirmative defense is legally the same as bringing an 'action' to enforce it*. The defendant becomes an actor." (*Id.* at p. 747, italics added.) In conclusion to his dissent, Justice Armstrong wrote: "Neither party asserts that the language of the release is ambiguous, and we thus do not have the benefit (or burden) of extrinsic evidence. However, I believe I may confidently state that it is not within the imagination of mortal lawyers to draft an attorney fee clause which provides for fees if the winner filed, but not if the winner defended, and that if lawyers ever managed to agree on such an unusual arrangement, they would document that agreement with elaborate care." (*Ibid.*)

Fast-forward nine years, and the Second District faced the same issue yet a third time in *Windsor Pacific*. The *Windsor Pacific* court rejected the holdings in *Exxess* and *Gil* because it "believe[d] that the analysis in Justice Armstrong's dissent in *Gil* is correct." (*Windsor Pacific*, *supra*, 213 Cal.App.4th at p. 276.) We agree with the *Windsor Pacific* panel and with Justice Armstrong that the word "action," in ordinary

---

[10] See *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 670-674, in which a majority of the same court, again over a strong dissent by Justice Armstrong, construed in a similar manner a statutory provision authorizing an attorney fees award to the prevailing party in an "action . . . to enforce the governing documents" (Civ. Code, § 1354, former subd. (f)).

usage, "encompass[es] the entire judicial proceeding, including the answer, and that an action in which the defendant asserted a defense based on a [contract] was an action brought to enforce the terms of the [contract] within the meaning of the attorney fee clause." (*Ibid.*) Defendants' affirmative defense is encompassed by the words "any legal action or any other proceeding."

Mountain Air seeks to distinguish this case from *Windsor Pacific* because the option agreement's attorney fees clause, like those in *Exxess* and *Gil*, uses a form of the verb "bring," whereas the attorney fees clause in *Windsor Pacific* did not. Mountain Air maintains that "bringing" an action or proceeding makes the scope of the fees clause much narrower than it would be otherwise. We disagree. To hold that attorney fees clauses referring to "action[s] brought to enforce" (*Gil*, *supra*, 121 Cal.App.4th at p. 742) have a materially different meaning from those referring to "action[s] . . . to enforce" (*Windsor Pacific*, *supra*, 213 Cal.App.4th at p. 268, fn. 1) elevates form over substance and fiction over reality. Unsurprisingly, neither the *Exxess* court nor the *Gil* majority placed emphasis on the word "brings" or "brought." We agree with Justice Armstrong that "*[r]aising . . . an affirmative defense is legally the same as bringing an 'action'* " and that parties who actually intended to adopt a fees clause that would allow a prevailing party to obtain fees only if the party were a plaintiff and not if the party were a defendant would have gone to greater lengths to document it. (*Gil*, *supra*, 121 Cal.App.4th at p. 747 (dis. opn. of Armstrong, J.), italics added.)

Finally, we reject the interpretation advanced by Mountain Air and adopted by the courts in *Exxess* and *Gil* for the further reason that it would lead to absurd results: a defendant who sought interpretation and enforcement of the contract via affirmative defense could not recover attorney fees, but if in addition or instead that same defendant simply filed a cross-complaint for declaratory relief asserting precisely the same facts and arguments, the defendant could. The idea that the parties intended such a form-over-function approach to govern recovery of attorney fees strains credulity.

18

## 2. *The Novation Defense Enforced the Contract and Arose Because of a Dispute in Connection with a Provision of the Option Agreement.*

We now turn to the question whether defendants' affirmative defense falls within the subject matter covered by the option agreement's fees provision. As an initial matter, it seems to us that if a contract has a material purpose (such as novating a prior contract), whether or not explicitly stated, then a party who invokes the contract to accomplish that purpose seeks to "enforce" the contract. However, we need not adopt so broad a rule. Here, the option agreement is explicit: its integration clause, by its terms, "expressly supersedes all previous or contemporaneous agreements, understandings, representations, or statements between the parties respecting this matter." In raising their novation defense, defendants sought to enforce the integration clause and by doing so to accomplish a material purpose of the option agreement: the extinguishment of the repurchase agreement. Defendants' invocation of the option agreement, its integration clause and its intended effect as a novation was as much an enforcement of the option agreement and its terms as a suit or defense based on any other provision. To be sure, the option agreement had additional purposes beyond novating the repurchase agreement.[11] But novation was fundamental to all of the others; it was the means by which the parties supplanted the obligations and rights to which they had previously agreed with different obligations and rights.

The attorney fees clause also applies to the affirmative defense of novation because it was raised "because of an alleged dispute, breach, default, or misrepresentation in connection with any provision" of the option agreement. This is broad language,

---

[11] Our dissenting colleague expresses the concern that the defendants apparently never exercised the option to repurchase the south tower. (Dis. opn. *post*, at p. 10.) We fail to see how that matters. The option agreement had multiple provisions, one of which was the integration clause expressly novating the earlier repurchase agreement. That other provisions of the agreement—those entitling defendants to opt to purchase *or not purchase* the south tower—did not require enforcement neither eliminated the dispute about, nor avoided defendants' need to enforce, the novation provision. The fees clause covers actions and proceedings to enforce or resolve a dispute about "any" provision of the agreement; it does not require that *all* provisions be in dispute.

19

encompassing a wide range of possible allegations. (See *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 992-993 [" 'the broad language of the attorney fee clause . . . permitted recovery of attorney fees for breach of contract or any other claim asserted *in connection with* the lease' "]; *Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277 [clause allowing recovery of attorney fees for any claim asserted *in connection with* the lease encompassed both contract and tort causes of action].) Defendants asserted their novation defense because of a dispute "in connection with" the option agreement, and in particular the integration clause—specifically, whether the agreement and that clause reflected an intent to extinguish the repurchase agreement.

When the trial court denied a grant of attorney fees to defendants, it stated that "none of the provisions in the Option Agreement were actually 'in dispute' in this case." This statement is inexplicable given the express provision in the integration clause that prior agreements were superseded. There can be no doubt here that Mountain Air and defendants disputed the meaning and effect of the option agreement, including its integration clause. Scarpa was evasive about the meaning of the integration clause and contended the option agreement was an "accommodation" that would operate in parallel with and was complementary to the repurchase agreement, whereas defendants contended that the integration clause meant what it said, which was that the option agreement superseded the repurchase agreement. The "in connection with" language is broad enough to encompass such a dispute.[12]

---

[12] Our dissenting colleague parts ways with us on this aspect of our ruling, suggesting that we should strictly construe the fees provision and defer to the trial court's determination that it did not apply in this case. (Dis. opn. *post*, at p. 7.) As discussed above, there is no rule of strict construction in regard to attorney fees clauses; rather, *Santisas* holds that ordinary contract interpretation principles apply. If we applied a rule of strict construction, we would not have held that assertion of an affirmative defense constitutes bringing an action or other proceeding—a holding with which our dissenting colleague agrees. Regarding the dissent's suggestion that deference to the trial court is in order here, we disagree. We review contract interpretation de novo and no question of fact is at issue.

Because the novation defense sought to enforce the option agreement and defendants raised it "because of an alleged dispute . . . in connection with [the integration] provision," the subject matter of the novation defense falls within the subject matter covered by the attorney fees clause.[13]  Because we have already determined that the form in which the issue was raised—an affirmative defense—is within the boundaries of litigation covered by the attorney fees clause of the option agreement, defendants are entitled to an award of attorney fees,[14] at least to the extent the litigation involved defendants' affirmative defense of novation.[15]

## DISPOSITION

The order of the trial court denying an award of attorney fees to defendants is reversed.  The matter is remanded for further proceedings in accord with this opinion.

---

[13]  Mountain Air essentially acknowledged this at oral argument, conceding that if defendants had filed a cross-complaint for declaratory relief *raising the same arguments as in their novation defense,* we would have a "very different situation."

[14]  Mountain Air maintains that because Sundowner was not a party to the option agreement, it cannot recover attorney fees under that agreement.  Whether attorney fees paid and/or owed by Madjlessi and Larsen are separable from fees paid and/or owed by Sundowner is a matter for the trial court on remand.

[15]  We leave to the trial court, on remand, whether an apportionment of fees is appropriate in light of the litigation of issues extraneous to the novation defense.

_____
STEWART, J.

I concur.

_____
KLINE, P.J.

_Mountain Air Enterprises, LLC v. Sundowner Towers, LLC et al._ (A138306)

Trial Court/Case No.:                                Marin County Superior Court
                                                     No. CIV081957

Trial Judge:                                         Hon. Roy O. Chernus

Attorney for Plaintiff and Respondent                Erik A. Humber
Mountain Air Enterprises, LLC:                       Law Office of Erik A. Humber
                                                     165 North Redwood Drive, Suite 110
                                                     San Rafael, CA 94903


Attorney for Defendants and Appellants               Joe R. Abramson
Sundowner Towers, LLC et al.:                        Abramson & Brown
                                                     21700 Oxnard Street, Suite 430
                                                     Woodland Hills, CA 91367

A138306, *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC et al.*

Dissenting opinion of Richman, J.

The Honorable Roy O. Chernus, an experienced trial judge, heard 18 days of testimony in a lawsuit brought by Mountain Air against three defendants for breach of a repurchase agreement and an accompanying guaranty. Judge Chernus filed a comprehensive, 40-page statement of decision ruling against Mountain Air, concluding that two affirmative defenses had merit: (1) the repurchase agreement was illegal, and (2) the repurchase agreement was extinguished by an option agreement.

Defendants thereafter filed a motion for attorney fees, based on provisions in the repurchase agreement and in the option agreement, seeking $774,141. Judge Chernus denied the request, concluding that the fees provision in the illegal repurchase agreement could not support fees. And as to the provision in the option agreement, Judge Chernus carefully analyzed—indeed, in the words of defendants' counsel, "very closely scrutinized"—the language in the provision and held that the litigation before him did not come within that language.

The majority agrees with Judge Chernus on his first holding, but disagrees on the second, going so far as to say that one of his comments was "inexplicable." (Maj. opn. *ante*, at p. 20.) I disagree. I believe Judge Chernus correctly analyzed the setting before him, correctly analyzed the applicable law, and reached the correct result. I therefore dissent.

## BACKGROUND

The majority briefly sets forth the general background facts, in five short paragraphs, and does so accurately, as far as it goes. But the majority's exposition nowhere describes the setting here—not the parties, not their relationships, not their history, not the genesis of the relevant documents. Put otherwise, one reads the majority opinion as though the 18 days of trial involved some straightforward, run-of-the-mill case involving breach of a real estate contract. Hardly.

1

The lawsuit was filed by Mountain Air, which, as the majority notes, is a single-purpose California limited liability company whose sole member is Steven Scarpa. Mountain Air's complaint named three defendants: Sundowner—the other party to the repurchase agreement, which, as the majority also notes, is a Nevada limited liability company—and its two members, Bijan Madjlessi and Glenn Larsen. The complaint alleged three causes of action: (1) specific performance of the repurchase agreement; (2) breach of the guaranty for the repurchase agreement, which was executed by Madjlessi and Larsen; and (3) breach of the repurchase agreement. While all three causes of action purport to be against Madjlessi and Larsen, it is clear from the pleadings that they were involved only as guarantors, demonstrated by the allegations against them in the first and third causes of action, which talk only of their involvement with the guaranty.

Following a motion to amend their answer, defendants alleged numerous affirmative defenses, two of which are pertinent here: the second and fourth. The second affirmative defense alleged this: "Novation. [¶] 3. On or about April 26, 2006, Mountain Air, Madjlessi, and Larsen executed that certain written Option Agreement ('the Option Agreement') and a written Guarantee, whereby Mountain Air granted Madjlessi and Larsen the right to purchase the South Tower on the terms and conditions set forth therein. Pursuant to paragraph 20(d) of the Option Agreement, the Option Agreement expressly superseded all prior agreements relating to the South Tower. [¶] 4. The Option agreement was a novation superseding and replacing the terms and conditions of the Purchase Agreement . . . . [¶] 5. By reason of the novation, Defendants have no liability under the claims asserted in the [Second Amended Complaint]."

The fourth affirmative defense alleged that the repurchase agreement is "illegal, void, and unenforceable."

The above describes the pleadings, which are, as noted, more generally set forth by the majority. But not set forth at all is anything about any of the participants involved in this lawsuit, beginning with who it was that counseled the parties—all the parties—and prepared the documents—all the documents—leading to the lawsuit: attorney David

2

Santi. Thus, the trial began with an Evidence Code section 402 hearing—five days of hearing—to determine whether attorney Santi had represented Scarpa, or Madjlessi, or both. Judge Chernus concluded both—that Santi was their joint attorney, and that no attorney-client privilege would pertain. So, that was one out-of-the-ordinary fact involved in this case.

Another was the protagonists, Scarpa and Madjlessi. As Judge Chernus described them: "The principal participants in this dispute are Scarpa and Madjlessi, both of whom are sophisticated real estate investors and developers. Scarpa owns more than 1,000 residential housing units, is a licensed real estate broker [citation], and has been involved in real estate transactions for decades. On at least two . . . occasions, Scarpa had acted as a developer for specific residential housing projects in California.

"Madjlessi is an experienced licensed contractor and real estate developer who, prior to this transaction, had built and sold numerous residential housing tracts in California at sale prices aggregating more than $300,000,000.

"Scarpa and Madjlessi met approximately twenty . . . years prior to the commencement of this litigation. Scarpa and Madjlessi, either directly, or through affiliated business entities, had done business together on numerous occasions prior to the transactions described in Mountain Air's Complaint. And, Scarpa and Madjlessi had become social friends. During the twenty . . . years prior to the commencement of this action, Scarpa, or his affiliated entities, had lent money to Madjlessi or his affiliated entities on more than fifty . . . occasions [¶] . . . [¶]

"The lender-borrower relationship between Scarpa and Madjlessi was very complicated. From time to time, loans made to Madjlessi were not repaid on time. Scarpa and Madjlessi developed a pattern of 'recycling' or renewing loans that had not been paid on time by either, for a fee, extending the due date of the loans, or, by taking a loan secured by specific real property and by improving the quality of the security for repayment of the loan by securing an existing loan by different property. Interest rates on the loans typically averaged between ten percent . . . and twelve percent . . . and Scarpa

3

often charged Madjlessi points or loan fees in connection with the making of the loans [citations]." (Fns. omitted.)

As indicated, Judge Chernus heard 18 days of testimony, ultimately to rule for defendants. He did so in his final statement of decision, a 40-page (exclusive of addenda) ruling that discussed in great detail the issues before him and the respective positions of the parties. Included in that discussion was Judge Chernus's distillation of the parties' position on the option agreement: "The testimony of Madjlessi and Scarpa regarding the reason for the Option Agreement was conflicting. Scarpa testified that Madjlessi asked Scarpa to execute the Option Agreement as an accommodation; that it would assist Madjlessi in obtaining financing. Madjlessi, on the other hand, testified that the Option Agreement had nothing to do with Bank financing, and, by reference to Exhibit 32, stated that an option had always been the manner in which he wanted to close the transaction just as had been done in connection with the Yanoff transaction. [¶] Significantly, during Trial, Santi admitted that he had not unilaterally made up the specific terms of the Option Agreement; to the contrary, he admitted that he had derived the terms of the Operating Agreement from his participation in discussions with Madjlessi and Scarpa." (Fn. omitted.)

Judge Chernus went on to describe Scarpa's position on the option: that it was to "accommodate" Madjlessi, that it was an "accommodation" to him, and that it was "complementary" to the repurchase agreement. Judge Chernus then rejected Scarpa's position, holding that the intent of the option agreement was to "extinguish the Repurchase Agreement."

Judge Chernus then devoted 12 pages of analysis to his conclusion that the repurchase agreement was illegal and void, finally to conclude that the "Repurchase Agreement was extinguished by the subsequent written option agreement." It was a "novation."

Defendants thereafter filed a motion seeking attorney fees pursuant to separate provisions in the repurchase agreement and in the option agreement, seeking $774,141. Following opposition and reply, the attorney fees motion (along with Mountain Air's

4

motion to tax costs) came on for hearing on March 13, against the background that Judge Chernus had entered a tentative ruling denying both motions, a tentative ruling contested by both sides.

Following argument on Mountain Air's motion to tax, the hearing turned to defendants' argument addressing the portion of Judge Chernus's tentative ruling denying attorney fees. Early in his argument, defendants' counsel acknowledged the unusual nature of the setting here, some of which I touched on above. Thus, counsel began: "Both Mr. Madjlessi and Mr. Scarpa, who you observed for 18 days here and in a variety of law and motion matters, they're both sophisticated guys. Mr. Scarpa, his sophistication was in the area of lending money, and while not necessarily a real estate developer, he lent millions of dollars to Mr. Madjlessi. Mr. Madjlessi was a developer. [¶] They both shared one thing in common, Dave Santi, and Santi documented all their deals. So he prepared the repurchase agreement, he prepared the option agreement, he prepared a bunch of other documents along the way, and you got to see him, you got to see him testify, and you got to read his documents. [¶] In my view, there was some things that were very troublesome in terms of what Mr. Santi did. I think that—I asked myself if I was in your chair, how would I feel about all this stuff? . . . [¶] . . . [¶] And, Your Honor, I do feel that although the tentative ruling wasn't long, it clearly set forth your intent. I know the analysis you did, I understand it, I appreciate it. I know the Court very closely scrutinized the attorney's fees clause, and I do appreciate—I think you scrutinized it more closely than I did, and I do appreciate that; so when I saw the tentative yesterday, I had to step back a little bit and rethink why we were right, and I still think we're right, so I'm going to present that." And on counsel went. To no avail.

On March 20, Judge Chernus entered an order denying defendants attorney fees under both the repurchase agreement and the option agreement—an order, not incidentally another part of the record ignored by the majority, which mentions only a portion of it. This is its essence.

Judge Chernus first discussed the repurchase agreement, and relied "on the general rule . . . that if the entire contract is void for illegality, attorney fees are unavailable.

5

[Citations.]"  Then, discussing the option agreement, Judge Chernus ruled as follows: "With regards to the Option Agreement, the court agrees with Mountain Air that *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, also is distinguishable because the fee provision in the Option Agreement is much narrower and only applies to actions 'brought' for the enforcement of the Option Agreement or because of a dispute in connection with any provision of the Agreement, *not any action* between the parties that happens to concern the Option Agreement.  Defendants claim the key word in the Option fee provision is the word 'dispute,' while ignoring the prefatory language limiting fees to actions 'brought' on the contract.  Defendants also fail to fully quote the 'in connection with' language, leaving off the part that limits fees to actions brought because of a dispute in connection with 'any provision of' the Option Agreement.  While it is true that the court in its [final statement of decision] pp. 13-14 compared several provisions in the Option Agreement with those in the Repurchase Agreement to determine whether the Option Agreement was intended to act as novation, none of the provisions in the Option Agreement were actually 'in dispute' in this case."

The majority holds that Judge Chernus erred in connection with his ruling regarding the option agreement.  I disagree.  I think his analysis was spot on.

## DISCUSSION

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation . . . is left to the agreement, express or implied, of the parties." (Code Civ. Proc., § 1021.)  This section is the California version of the "American rule," under which each party must pay its own legal fees.  (*Trope v. Katz* (1995) 11 Cal.4th 274, 278-279.)

So, the issue is whether there is some agreement that changes the American rule. And in answering that issue, the court's "analysis begins and ends with the language of the attorney fee clause on which [defendants] rely.  [Citations.] . . . ."  (*People ex rel. Dept. of Corporations v. Speedee Oil Change Systems, Inc.* (2007) 147 Cal.App.4th 424, 429.)

6

The California Supreme Court has synthesized the applicable principles—there, in the context of "prevailing party"—this way: " 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id*., § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations].' [Citation.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.) As the Civil Code succinctly puts it, "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

In sum and in short, Judge Chernus's responsibility was to apply the language of the attorney fees provision to the proceeding before him, to determine if the proceeding was within the language. And in doing so, he was—and we are—governed by one more principle: "Scope of Provision Strictly Construed." (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 168, p. 712.)

The attorney fees provision in the option agreement provides in applicable part as follows: "*Litigation Costs*. If any legal action or any other proceeding, including arbitration or an action for declaratory relief; is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees, expert fees and other costs incurred in that action or proceeding, in addition to any other relief to which the prevailing party may be entitled."

Immediately following its quotation of the attorney fees provision, the majority opinion seemingly frames the question—in my view, inappropriately—this way: "Defendants are entitled to attorney fees if this clause encompasses defendants' affirmative defense that the option agreement constituted a novation, voiding the repurchase agreement. This is a question of contract interpretation, which we review

7

de novo because neither party cites extrinsic evidence that bears upon interpretation of the option agreement." (Maj. opn. *ante*, at p. 12.) Then, after one paragraph about contract interpretation, the majority says this: "There are two aspects to the interpretation issue: first, whether an affirmative defense may constitute an 'action or any other proceeding . . . brought' within the meaning of the option agreement's fees provision and second, whether defendants' affirmative defense of novation was brought either 'for the enforcement of [the option] Agreement' or 'because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of [the option] Agreement.' The first question concerns the form of the novation defense, and the second concerns the subject matter of the defense. We will address each in turn." (Maj. opn. *ante*, at p. 13.)

Addressing the first "aspect" of the issue, the majority spends over six pages discussing whether an affirmative defense can come within "action" or "proceeding," included within which is an exhaustive discussion of three Second District cases. (Maj. opn. *ante*, at pp. 13-18.) The majority observes that the dissent in the second case was correct, and ultimately concludes that the third case—*Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263—supports the majority's conclusion here. I have no quarrel with the concept that attorney fees can be proper even if one is asserting a position in defense. That said, the cases have no application here, as in all three cases the attorney fees provision was broad—not to mention in the document sued on.

Regardless, the issue here is not whether there was an "action" or a "proceeding." The issue is what the action or proceeding was for. More specifically, as germane to the issue here, whether it was for "enforcement of this agreement" or "because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement."

That, the majority analyzes in a few paragraphs in the last two and one-half pages of its opinion, as follows: "As an initial matter, it seems to us that if a contract has a material purpose (such as novating a prior contract), whether or not explicitly stated, then a party who invokes the contract to accomplish that purpose seeks to 'enforce' the

contract. However, we need not adopt so broad a rule. Here, the option agreement is explicit: its integration clause, by its terms, 'expressly supersedes all previous or contemporaneous agreements, understandings, representations, or statements between the parties respecting this matter.' In raising their novation defense, defendants sought to enforce the integration clause and by doing so to accomplish a material purpose of the option agreement: the extinguishment of the repurchase agreement. Defendants' invocation of the option agreement, its integration clause and its intended effect as a novation was as much an enforcement of the option agreement and its terms as a suit or defense based on any other provision. To be sure, the option agreement had additional purposes beyond novating the repurchase agreement. But novation was fundamental to all of the others; it was the means by which the parties supplanted the obligations and rights to which they had previously agreed with different obligations and rights.

"The attorney fees clause also applies to the affirmative defense of novation because it was raised 'because of an alleged dispute, breach, default, or misrepresentation in connection with any provision" of the option agreement. This is broad language, encompassing a wide range of possible allegations. [Citations.] Defendants asserted their novation defense because of a dispute 'in connection with' the option agreement, and in particular the integration clause—specifically, whether the agreement and that clause reflected an intent to extinguish the repurchase agreement.

"When the trial court denied a grant of attorney fees to defendants, it stated that 'none of the provisions in the Option Agreement were actually "in dispute" in this case.' This statement is inexplicable given the express provision in the integration clause that prior agreements were superseded. There can be no doubt here that Mountain Air and defendants disputed the meaning and effect of the option agreement, including its integration clause. Scarpa was evasive about the meaning of the integration clause and contended the option agreement was an 'accommodation' that would operate in parallel with and was complementary to the repurchase agreement, whereas defendants contended that the integration clause meant what it said, which was that the option agreement

9

superseded the repurchase agreement. The 'in connection with' language is broad enough to encompass such a dispute." (Maj. opn. *ante*, at pp. 19-20, fns. omitted.)

Such an involved analysis is, I believe, flawed. And the lengths to which the majority goes to find the attorney fees provision applicable, inappropriate.

The provision here is clear. It allows for attorney fees if any legal action or proceeding is brought for either of two specific purposes: first, for "enforcement of this agreement," or second, "because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement." Never applying the actual language, the majority says that "defendants sought to enforce the integration clause and by doing so to accomplish a material purpose of the option agreement: the extinguishment of the repurchase agreement. Defendants' invocation of the option agreement, its integration clause and its intended effect as a novation was as much an enforcement of the option agreement and its terms as a suit or defense based on any other provision." (Maj. opn. *ante*, at p. 19.) In other words, I gather, novation is enforcement.

But it is not. As counsel for defendants acknowledged at oral argument, the option agreement is still extant, never exercised. Never "enforced."

As to the second alternative that could support attorney fees, Judge Chernus addressed the language in detail. As quoted above, he explained that the dispute must be "in connection with any provision of the Agreement, *not any action* between the parties that happens to concern the Option Agreement. Defendants claim the key word in the Option fee provision is the word 'dispute,' while ignoring the prefatory language limiting fees to actions 'brought' on the contract. Defendants also fail to fully quote the 'in connection with' language, leaving off the part that limits fees to actions brought because of a dispute in connection with 'any provision of' the Option Agreement. While it is true that the court in its [final statement of decision] pp. 13-14 compared several provisions in the Option Agreement with those in the Repurchase Agreement to determine whether the Option Agreement was intended to act as novation, none of the provisions in the Option Agreement were actually 'in dispute' in this case."

10

We said in *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1158, that the trial court is given wide discretion in determining whether a party has prevailed for purposes of awarding attorney fees. While Judge Chernus's determination did not determine who was the prevailing party, I see no reason why similarly wide discretion should not apply to a trial court's decision as to what was "in dispute" before him for 18 days.

In *CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc.* (2008) 160 Cal.App.4th 288, attorney fees had been awarded to successful defendants in a case involving misappropriation of trademarks and patents. The Court of Appeal reversed. After rejecting defendants' arguments based on a statute and an indemnification clause in an agreement between the parties, the court concluded as follows: "Defendants assert they are entitled to attorney fees under the attorney fees clauses of several other agreements. They are mistaken in each case. None of the defendants is a party to those agreements, and in two cases neither is CytoDyn. The mere mention of an agreement in a complaint does not mean, as defendants seem to believe, that the lawsuit has been brought to enforce those agreements. Moreover, even if defendants were parties to the agreements, the attorney fees clauses in most instances do not cover this lawsuit." (*Id.* at p. 301.)

While there was certainly more than "mere mention" of the option agreement here, as Judge Chernus properly determined, the case was not within either of the two specific, and limited, situations allowing attorney fees.

*Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515 is instructive. Pellegrini sued Weiss based on a joint venture agreement between them for the purchase and development of real property. Pellegrini prevailed on his claim for breach of fiduciary duty, but the court denied his claim for attorney fees on the ground there was no basis to award them. Both sides appealed. The Court of Appeal affirmed (with a modification as to interest). And in rejecting Pellegrini's cross-appeal for attorney fees, the court noted as follows: "Pellegrini argues his entitlement to attorney fees is as a result of the attorney fees provisions in the agreements between the parties. Specifically, there were a total of three agreements that both Pellegrini and Weiss were parties to: the MOU [memorandum

11

of understanding], the stock option agreement, and the voting trust agreement. It is undisputed the MOU contains no attorney fees provision. Therefore, the question is whether the attorney fees provisions found in the stock option agreement and the voting trust agreement provide a basis for Pellegrini's recovery of fees.

"While both the stock option agreement and the voting trust agreement do contain attorney fees provisions, Pellegrini's lawsuit was for the enforcement of the MOU, and the MOU was the only agreement attached to and incorporated by reference into the complaint. The MOU does not contain an attorney fees provision.

"Pellegrini asserts the three agreements were part of a single interrelated relationship or transaction, and pursuant to Civil Code section 1642, should be taken together for purposes of the attorney fees provision. It is a question of fact whether multiple contracts are intended to be elements of a single transaction under Civil Code section 1642. (*BMP Property Development v. Melvin* (1988) 198 Cal.App.3d 526, 531 . . . .) Where, as here, the record is silent, we must presume the trial court found all facts necessary to support the order. (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451, fn. 4 . . . .) . . . [¶] . . . [¶]

"The present case is markedly similar to *Pilcher v. Wheeler* (1992) 2 Cal.App.4th 352 (*Pilcher*), in which the court determined that no attorney fees should be awarded. In *Pilcher*, the parties had a partnership agreement for the development of real property that contained no attorney fees provision. When problems arose between them, the plaintiff sued for breach of contract and breach of fiduciary duty pursuant to the partnership agreement. Following trial and a favorable verdict, the defendants moved for attorney fees, asserting the construction contract for the development of the property that contained an attorney fees provision was part of an integrated agreement pursuant to Civil Code section 1642. The *Pilcher* court rejected the defendants' argument, finding the construction contract was peripheral and not intended to be integrated into the partnership agreement.

"Here, we arrive at the same conclusion as the court in *Pilcher*. The MOU was the only agreement upon which Pellegrini asserted his causes of action, and was the only

12

agreement incorporated by reference into the complaint. The stock option agreement and the voting trust agreement were peripheral to the MOU, and were not part of an integrated agreement pursuant to Civil Code section 1642. Therefore, we find no error in the trial court's denial of Pellegrini's motion for attorney fees on the ground that there was no legal basis to award such fees." (*Pellegrini v. Weiss*, *supra*,165 Cal.App.4th at pp. 534-535; see *Vons Cos., Inc. v. Lyle Parks Jr., Inc.* (2009) 177 Cal.App.4th 823, 834 [assignee of warranty that did not contain attorney fees provisions had no right to recover fees, even though related construction contract, which was not assigned, did contain provision].)

I close with a final observation. As quoted, the majority says the attorney fees provision here "is broad language, encompassing a wide range of possible allegations. (See *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 992-993 [' "the broad language of the attorney fee clause [which was 'any dispute'] . . . permitted recovery of attorney fees for breach of contract or any other claim asserted *in connection with* the lease" ']; *Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277 [clause allowing recovery of attorney fees for any claim asserted *in connection with* the lease encompassed both contract and tort causes of action].)" (Maj. opn. *ante*, at pp. 19-20.) Judge Chernus disagreed. So do I. Certainly the provision in the option agreement is narrower than those in *Maynard* or *Cruz*, as manifest by the language the majority quotes. The language is also certainly narrower than the cases discussing, and applying, broad attorney fees clauses. (See, e.g., *Thomson v. Miller* (2003) 112 Cal.App.4th 327, 336 [" 'any dispute under [the agreements]' "]; *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1831 [action "relating to" the contract]; and *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342-1343 [for any action to which the agreement "gives rise"].)

RICHMAN, J.

13